UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**CASE NO. 9:21-CV-80929-DMM**

TERRY TANNENBAUM, on his own
behalf and on behalf of all others similarly
situated,

    Plaintiff,

v.

CALIBER HOME LOANS, INC., a
Delaware corporation,

    Defendant.

_____/

**DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Caliber Home Loans, Inc. ("Caliber") moves to dismiss plaintiff Terry Tannenbaum's class action complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1 as follows:

### I. INTRODUCTION

Plaintiff brings a single claim for violation of 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") which prohibits debt collectors from communicating, in connection with the collection of any debt, with any person other than the consumer, except with the consumer's prior consent or when other exceptions outlined in the statute apply. Plaintiff alleges Caliber violated this provision by utilizing the ministerial services of an outside print-and-mail vendor. This suit, like many others, was filed shortly after the 11th Circuit Court of Appeals issued its ruling in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021).

Plaintiff's claim should be dismissed because: (i) Plaintiff provided prior, written consent to Caliber to share his information with third parties, an express exception to § 1692c(b); (ii) Plaintiff lacks a concrete injury, and thus Article III standing, because the mortgage loan account information Caliber allegedly provided its vendor does not bear a sufficiently close relationship to the common law tort of invasion of privacy required by the *Hunstein* court in the absence of a tangible harm; (iii) Caliber's provision of information to its print-and-mail vendor does not constitute a third-party "communication" in violation of §1692c(b) because the clerical services provided by the vendor served merely as the medium through which Caliber communicated with Plaintiff, as authorized by the CFPB and consistent with other relevant portions of the statute; and (iv) Plaintiff failed to provide Caliber with the contractually-required presuit notice and opportunity to cure before bringing this action.

## II. FACTUAL BACKGROUND

Section 1692c(b) of the FDCPA states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Plaintiff alleges that Caliber services his past-due mortgage loan (Compl., ¶ 11) and that, in connection with its servicing, Caliber provides information regarding Plaintiff and his mortgage loan to outsourced print-and-mail vendors. Compl., ¶ 13. These vendors provide clerical services such as printing and mailing correspondence Caliber sends to Plaintiff. *Id.* In support of these allegations, Plaintiff claims that Caliber shares information with Caneel Group, who contacted Plaintiff for loss mitigation purposes on Caliber's behalf. *Id.*, ¶ 16. Plaintiff also identifies three letters Plaintiff received, dated June 17, 2020, June 18, 2020, and January 4, 2021. *Id.*, ¶ 12.

2

Finally, Plaintiff attached to his complaint portions of two privacy notices, stating Caliber would share information regarding Plaintiff's loan to its servicing vendors for business purposes, including maintenance of Plaintiff's account. ECF No. 1-3, pp. 3, 6.

Copies of the June 17, 2020 and June 18, 2020 letters referenced in Plaintiff's complaint are attached to this motion as Exhibits 1 and 2, respectively.[1] In the June 17, 2020 letter, Caliber acknowledged receipt of Plaintiff's documents package, which he submitted in connection with his request for loss mitigation assistance. *See* Ex. 1. Caliber also provided information regarding its loss mitigation review process. In the June 18, 2020 letter, Caliber acknowledged Plaintiff's request for a deed-in-lieu of foreclosure, advised the Plaintiff his request was being processed for review, and requested additional documents necessary to complete the deed-in-lieu review. *See* Ex. 2.

Plaintiff contends that by relying on outside vendors to complete certain clerical functions such as printing and mailing correspondence, Caliber violated 15 U.S.C. § 1692c(b). The sole basis of Plaintiff's claim is the *Hunstein* decision, in which the Court held as a matter of first impression that a complaint sufficiently alleged a debt collector's electronic disclosure of the borrower's personal information such as the identity and medical history of the borrower's child and his outstanding balance with its third-party dunning vendor violated 15 U.S.C. § 1692c(b). The

---

[1] The Court can properly consider the June 17, 2020 and June 18, 2020 letters on Caliber's motion to dismiss because the letters are: (1) central to Plaintiff's claim; and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The letters are central to Plaintiff's claim because he cites them as evidence that Caliber uses a print-and-mail vendor and also as proof that the communications were sent in connection with the collection of a debt. *See* Compl., ¶¶ 12-13; *see also Ismail v. Ascensionpoint Recovery Servs.*, LLC, No. 2:18-cv-01345-JHE, 2019 WL 5894311, at *2 n.3 (N.D. Ala. Nov. 12, 2019) (considering letter forming the basis of § 1692c claim on motion for judgment on the pleadings where it formed the basis for the plaintiff's causes of action and was referenced in the complaint). Plaintiff did not attach the letter dated January 4, 2021 to his complaint and Caliber has been unable to locate any such letter in its records.

*Hunstein* decision is the first of its kind in any of the U.S. Circuit Courts and addressed two discrete issues: (i) whether the alleged § 1692c(b) violation—in the absence of a tangible injury or risk of real harm—gives rise to an intangible-but-nonetheless-concrete injury in fact under Article III; and (ii) whether a debt collector's communication with its dunning vendor was "in connection with the collection of any debt". *Id.* at 1344. The *Hunstein* court answered both questions in the affirmative. *Id.* The debt collector in *Hunstein* filed a petition for rehearing and for rehearing *en banc* on May 26, 2021, and on June 10, 2021, the Eleventh Circuit authorized approximately 20 amici curiae to file briefs in support of the rehearing. The Eleventh Circuit withheld issuance of the mandate on June 14, 2021, and as of the date of this filing, has not yet ruled on the petition for rehearing.

Plaintiff's claim arises in a different context than the medical debt at issue in *Hunstein*. Specifically, Plaintiff's debt is a mortgage loan, the terms and conditions of which are governed by three loan documents: (i) a home equity line of credit note; (ii) short form mortgage; and (iii) master form mortgage.[2] Specifically, Plaintiff executed a Bank of America Equity Maximizer Agreement and Disclosure Statement on August 15, 2017 in exchange for a $268,000 home equity line of credit (the "Note"). The Note is attached as Exhibit 3.[3] In paragraph 5 of the Note, Plaintiff

---

[2] The Court may properly consider Plaintiff's loan documents on a motion to dismiss because they are central to his claim and undisputed. *Day*, 400 F.3d at 1276. Specifically, Plaintiff alleges his claims arise from his past-due mortgage balance and Caliber's efforts to communicate with him regarding the mortgage loan for loss mitigation purposes. *See* Compl., ¶¶ 11, 16. Plaintiff's loan documents govern the terms of his mortgage and his relationship with Caliber, and authorize the specific conduct alleged in this lawsuit—sharing information with third parties and loss mitigation efforts (as discussed below). In addition, Plaintiff's loan documents are necessary for Plaintiff to prove that the debt at issue is a consumer debt and therefore subject to the FDCPA. *Oro v. Norwegian Cruise Line Holdings Ltd.*, No. 1:19-cv-20964-KMM, 2019 WL 9045103, at *2 n.1 (S.D. Fla. Dec. 11, 2019) (finding notice letter was central to plaintiff's claim because pursuant to the applicable contract, notice was a condition precedent to his claim and therefore the plaintiff was required to offer the notice to prove his case).

[3] Plaintiff cannot reasonably dispute the authenticity of the loan documents. He executed the Note, and the Short Form Mortgage and Master Form Mortgage are incorporated into the Note and recorded in the Official Records of Palm Beach County, Florida. *Day*, 400 F.3d at 1276 ("In this

4

agreed to perform all covenants and obligations required under the "Security Instrument," defined by the Note as a "mortgage, deed of trust, or security deed." Ex. 3, ¶ 5. The term Security Instrument includes the Home Equity Line of Credit Short Form Mortgage dated August 15, 2017 (the "Short Form Mortgage"), issued in conjunction with the Note and which is recorded in the Official Records of Palm Beach County, Florida. *See* Short Form Mortgage, attached as Exhibit 4. The Short Form Mortgage, in turn, incorporates by reference all definitions, covenants, and provisions contained in the Home Equity Line of Credit Master Form Mortgage, which is also recorded in the Official Records of Palm Beach County, Florida ("Master Form Mortgage") and attached as Exhibit 5. *See* Ex. 4, p. 2.

Plaintiff's loan documents contain a number of provisions pertinent to Plaintiff's claim. For example, Plaintiff's Note authorizes Caliber to release Plaintiff's information to third parties:

> You authorize us to release information about you to our affiliates or third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you do not opt out of the applicable policy or as permitted by applicable law.

Note, ¶ 25. The Note also authorizes Caliber, in the event of a default, to take action including, but not limited to, the loss mitigation efforts Plaintiff identifies in the complaint:

> We may, at our option, take lesser action than those described in this Section [which authorizes termination of Plaintiff's loan]. Such lesser action may include, without limitation, suspending your Account and not allowing you to obtain any further Advances, reducing your Credit Limit, and/or changing the payment terms on your account.

\* \* \*

---

context, "undisputed" means that the authenticity of the document is not challenged.") (citing *Horsley*, 304 F.3d at 1134). Alternatively, Caliber requests that the Court take judicial notice of the Short Form Mortgage and Master Form Mortgage. *Beepot v. J.P. Morgan Chase Nat. Corp. Servs.*, Inc., 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014) ("Under appropriate circumstances, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment.").

5

> After you open your Account, we may modify or amend the terms of this Agreement and/or the other loan documents pertaining to the Account if any of the following conditions exist: 1) You consent in writing to our proposed modification or amendment at that time; 2) The modification or amendment unequivocally benefits you throughout the remainder of the term of this Agreement . . . .

Note, ¶¶ 18(A), 22.

Plaintiff's Master Form Mortgage required Plaintiff to provide Caliber with presuit notice and an opportunity to cure before commencing any judicial action arising from Caliber's actions pursuant to the loan documents:

> Neither borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action.

Master Form Mortgage, ¶ 20.

On May 25, 2021, Plaintiff filed this lawsuit against Caliber notwithstanding the contractual provisions authorizing the conduct at issue in this lawsuit and without providing the mandatory presuit notice.

### III.   MEMORANDUM OF LAW

#### A. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Am. Dental Ass'n*

6

*v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations and citation omitted).

### B. ARGUMENT

#### 1. Plaintiff's § 1692c(b) claim fails because he provided consent to share information with third parties.

Plaintiff's complaint is fatally flawed because the Note conclusively establishes that he provided Caliber with consent to share his information with third parties:

> You authorize us to release information about you to our affiliates or third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you do not opt out of the applicable policy or as permitted by applicable law.

Note, ¶ 25. The privacy notices attached to Plaintiff's complaint show that Caliber shared loan information with its servicing vendors for business purposes, including maintenance of Plaintiff's account, in accordance with that authorization. ECF No. 1-3, pp. 3, 6. Thus, the Note authorized the conduct at issue here—Caliber's release of information to print-and-mail vendors for loss mitigation purposes. The Court noted in *Hunstein* that the FDCPA's prohibition on third-party communications is "subject to several carefully-crafted exceptions," (*Hunstein*, 994 F.3d at 1345), one of which is provision of consent directly to the debt collector, as Plaintiff has done here. Dismissal is therefore appropriate because the Note defeats Plaintiff's claim. *See, e.g., Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1143 (D. Utah June 16, 2008) (dismissing § 1692c(b) claim because the deed of trust authorized the trustee to record a notice of default in the public records). Consent to any publication of matter that invades privacy creates an absolute privilege so long as the publication does not exceed the scope of the consent. Restatement (Second) of Torts § 652F cmt. b (Am. L. Inst. 1977); *see also Hunstein*, 994 F.3d at 1347 (identifying parallel tort of invasion

7

of privacy and citing Restatement (Second) of Torts for summary of claim); *Castagna v. Western Graphics Corp.*, 590 P.2d 291 (Or. Ct. App. 1979) (plaintiff, who consented to publication and sale of photograph, could not maintain action for an invasion of privacy arising out of distribution).

> **2. Plaintiff lacks Article III standing because, unlike in *Hunstein*, Plaintiff's claim does not involve publication of information that would be highly offensive to a reasonable person.**

To ensure that a plaintiff has Article III standing to bring a claim, the plaintiff must allege that he suffered a 1) concrete injury, 2) fairly traceable to the defendant's conduct, 3) likely to be redressed by a favorable decision. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As the *Hunstein* court explained:

> A plaintiff can meet the concreteness requirement in any of three ways. First, he can allege a tangible harm—a category that is "the most obvious and easiest to understand" and that includes, among other things, physical injury, financial loss, and emotional distress. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc); *see also Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019)). Second, a plaintiff can allege a "risk of real harm." *Muransky*, 979 F.3d at 927). Third, in the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury. *Spokeo*, 136 S. Ct. at 1549).

*Hunstein*, 994 F.3d at 1346.

Plaintiff has not argued that any tangible harm arose from Defendant's purported FDCPA violation, nor does Plaintiff plead a risk of real harm. Thus, as in *Hunstein*, this Court must consider whether Plaintiff can show Article III standing through "a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury." *Id*. A purely statutory violation does not inherently establish injury in fact. *Muransky,* 979 F.3d at 920. However, a court can discern a concrete injury where the "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Hunstein*, 994 F.3d at 1347.

In *Hunstein*, the panel found the specific violation of 15 U.S.C. § 1692c(b) at issue, which involved disclosure of the borrower's intimately-personal information such as the identity and

medical history of the borrower's child, provided Article III standing because the intangible harm alleged by the plaintiff had a close relationship to the tort of public disclosure of private facts. *Id*. To prevail on a public-disclosure-of-private-facts claim, a plaintiff must establish "1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) (citing Restatement (Second) of Torts § 652D (1977)). The *Hunstein* court did not address the publication or offense elements of the tort, presumably because the parties stipulated that the debt collector's disclosure of the borrower's personal information such as the identity and medical history of the borrower's child constituted a "communication" as defined by the FDCPA. *Hunstein*, 994 F.3d at 1349.

Here, Plaintiff lacks a concrete injury because Caliber's disclosure of account-related information to a vendor does not meet the offense or publication elements of a claim for public disclosure of private facts. *See, e.g., Ramirez v. TransUnion, LLC*, --- S.Ct. ---, 2021 WL 2599472, at *12 n.6 (June 25, 2021) (finding a lack of Article III standing for plaintiffs alleging a credit reporting company "published" misleading information by sending the information to its outside print-and-mail vendor) (citing *Mack v. Delta Airlines, Inc.*, 639 F. App'x 582, 586 (11th Cir. 2016)).

    **a. Plaintiff's claim does not involve a statement that is highly offensive to a reasonable person.**

The harm at issue in a public disclosure of private facts claim is publication of private information that would be "highly offensive to a reasonable person." *See, e.g., Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062-63 (Fla. 5th DCA 1991), *cause dismissed*, 581 So. 2d 1310 (Fla. 1991). Although Plaintiff's case is a copycat suit of *Hunstein*, it lacks the disclosure of uniquely-personal and sensitive information such as a child's identity and medical conditions. Plaintiff merely asserts disclosure of basic accounting data of a type that would exist any time a debt is

owed. *See* Compl., ¶ 32 ("Defendant has violated the FDCPA provision by communicating in connection with the collection of consumer debt with third party vendors"); Compl., ¶ 33 (Defendant violated 15 U.S.C. § 1692c(b) "by communicating with third-party vendors in connection with the collection of the Debt…by disclosing…the existence of the Debt, the amount allegedly owed, and the alleged creditor"); Compl., ¶ 34 ("the harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal debt.").

Courts have repeatedly held that disclosing account information to just a few people is not highly offensive. *See, e.g., Malverty v. Equifax Info. Servs.*, LLC, 407 F. Supp. 3d 1257, 1267 (M.D. Fla. 2019) (finding disclosure of information pertaining to a mortgage debt was not "inherently offensive, much less 'highly offensive,' "); *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831, at *21 (M.D. Fla. Mar. 22, 2013). Defendant's disclosure of Plaintiff's mortgage debt is no different. It doesn't rise to the necessary level of disclosing the "most intimate details of a man's life in his home," such as "sexual relations" and "family quarrels" (*see* Restatement (Second) of Torts § 652D) nor does it involve the type of sensitive, private information at issue in *Hunstein*: a child's identity and medical history.

### b. Plaintiff fails to plead facts to show an actual publication.

Publication requires disclosure "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." 77 C.J.S. Right of Privacy and Publicity § 32. In short, "publicity" means communication "to the public at large," not merely "to a third person." Restatement (Second) of Torts § 652D; accord, e.g., *Hickson v. Home Fed. of Atlanta*, 805 F. Supp. 1567, 1575 (N.D. Ga. 1992), aff'd, 14 F.3d 59 (11th Cir. 1994).

In this sense, the Supreme Court's recent decision in *Ramirez* is instructive. In *Ramirez*, the plaintiff sued on behalf of himself and a putative class of consumers alleging that TransUnion violated the FCRA when it failed to use reasonable procedures to ensure the accuracy of their credit files. *See Ramirez*, 2021 WL 2599472 at *3. Specifically, the plaintiff alleged TransUnion incorrectly included notations on their credit reports that consumers were a "potential match" to a name on a list of terrorists, drug traffickers, and other serious criminals maintained by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC). *Id.* at *4. The Supreme Court affirmed class certification and judgment in favor of those 1,853 class members who had their misleading credit reports provided to third parties. *Id.* at *11. It reversed class certification, however, as to those 6,332 class members whose credit reports were not provided to *material* third parties. *Id.* at *14. Critically, the court rejected the plaintiff's argument that TransUnion "published" the sensitive information by providing it to the vendors who printed and sent the mailings received by the class members. *Id.* The opinion observed that courts have not "necessarily recognized disclosures to printing vendors as actionable publications," *id.* at 12 n.6 (citing *Mack*, 639 F. App'x at 586 (11th Cir. 2016)), and explained, "[i]n short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently 'close relationship' to the traditional defamation tort to qualify for Article III standing." *Id.*

The same analysis and conclusion apply in the present case. Plaintiff's allegation that Caliber merely transmitted loan-related information to its vendor for the sole, clerical purpose of facilitating the communication to Plaintiff and no one else, fails to meet the publication element necessary to establish the common law claim of public disclosure of private facts and therefore lacks the close relationship to the common law tort of public disclosure of private facts the

Eleventh Circuit found in *Hunstein*. The FDCPA was not intended to prevent efficient outsourcing of ministerial duties, such as printing and stuffing letters. *See White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000). Electronic transmission of information to a machine is the antithesis of "public" disclosure. This type of *de minimus* contact, involving standard account information, does not fit within the common law analog defined by the *Hunstein* panel. *See, Flood v. Mercantile Adjustment Bureau*, 176 P.3d 769 (Colo. 2008) (debt collector's use of third party vendor was *de minimus* communication with third party which cannot be reasonably perceived as a threat to the consumer's privacy or reputation under state law analog to FDCPA.).

Plaintiff's allegations do not rise to the level of invasion of privacy at issue in *Hunstein*, either in subject matter or scope. Plaintiff has therefore failed to properly plead Art. III standing sufficient to invoke this court's jurisdiction.

### 3. Caliber's provision of information to its print-and-mail vendor was not a "communication" as defined by the FDCPA and therefore does not support a violation of § 1692c(b).

Plaintiff's § 1692c(b) claim requires a "communication," as defined by the FDCPA to a third party. The FDCPA definition of communication is "the conveying of information regarding a debt directly or indirectly *to* any person *through* any medium." 15 U.S.C. § 1692a(2) (emphasis added). Plaintiff's § 1692c(b) claim fails because the text of the FDCPA, its purpose and context, and the CFPB's endorsement of the use of vendors demonstrate that Caliber's print-and-mail vendor, in this context, is the medium through which it conveyed information to Plaintiff rather than the third-party recipient; therefore the provision of information to that vendor does not constitute a communication as contemplated by the FDCPA.[4]

---

[4] The *Hunstein* opinion did not address or rule on this particular argument. Rather, the parties conceded this element in their briefing. *See Hunstein*, 994 F.3d at 1348 ("Helpfully, the parties also agree that Preferred's transmittal of Hunstein's personal information to Compumail constitutes a "communication" within the meaning of the statute.").

      **a. The text of the FDCPA, as well as its purpose and context, demonstrate that Caliber's provision of information to its print-and-mail vendor was not a "communication" as defined by the FDCPA.**

The words "communication" and "third-party" must be interpreted with reference to the whole statutory text of the FDCPA, "considering the purpose and context of the statute and consulting any precedents or authorities that inform the analysis." *See Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006). As noted above, the purpose of the FDCPA's restrictions on third-party communications was to prohibit coercive, exploitative collection practices including disclosure of personal affairs to friends, neighbors, and employers. *See* Sen. Rep. No. 95-382, Cong. Record, Vol. 123, at p. 1696, 1699 (1977). Although the terms "person" and "medium", as used in the definition of communication in 15 U.S.C. § 1692a(2), are not defined in the FDCPA, one thing is clear from their context – they are mutually exclusive. "Person" does not include "medium" else the phrase "through any medium" would be surplusage. *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991) (statutes are interpreted to avoid surplusage). Accordingly, the definition of communication in 1692a(2) contemplates two recipients of conveyances – those *to* whom conveyances are made and those *through* whom conveyances are made. The phrase "to any person" refers to the target at which the conveyance is directed, *i.e.*, the object of the conveyance. The phrase "through any medium" includes the thing, or person, which carries the conveyance. Though each recipient receives and possesses the information conveyed, the medium dispossesses itself of the information by dispatching it to the target.

"Medium" means "a person through whom a purpose is accomplished." Webster's Third International Dictionary at 1403 (1961). A second sense of the definition includes, "something through or by which something is accomplished, conveyed, or carried on." *Id*., at 1402. The text of the FDCPA contemplates that both people and things would serve as mediums, such as when an individual serves legal process, § 1692a(6)(D), when a debt collector utilizes telephone systems

maintained and operated by third-parties, § 1692a(7), § 1692d(5), § 1692d(6), § 1692f(5), or when a collector communicates through a telegram service provider, § 1692b(5). In these instances, the process server, telephone system operator, and telegram company are not deemed third-party recipients of communications in violation of § 1692c(b).

Plaintiff's allegations here do not fit within the definition of a communication as defined by the FDCPA because the communications cited by Plaintiff to support his claims are only with Defendant's vendors. Compl., ¶ 13 ("provided information…to third-party vendors"); Compl., ¶ 16 ("Caliber has also communicated with Caneel Group, another third party vendor"); Compl., ¶ 32 ("Defendant has violated this FDCPA provision by communicating in connection with the collection of consumer debt with third party vendors"). A print-and-mail vendor is not the *object* of the creditor's communication—it is the medium that conveys it—like the process server, telephone operator, and telegram messenger. A conveyance of information through a medium is not a "communication" as defined by 15 U.S.C. § 1692a(2). The Supreme Court's recent decision in *Ramirez* greatly bolsters this conclusion. *Ramirez,* 2021 WL 2599472, at *14 (rejecting the plaintiff's argument that TransUnion "published" the sensitive information by providing it to the vendors who printed and sent the mailings received by the class members). Since Plaintiff has only alleged that Caliber provided information to its print-and-mail vendors, the Complaint fails to allege a communication as defined by the FDCPA and therefore lacks a necessary element of a §1692 claim.

  **b. The CFPB, the agency empowered to enforce the FDCPA, condones the use of third party vendors.**

The Consumer Finance Protection Bureau (CFPB) condones the use of print-and-mail vendors, further supporting the conclusion that the provision of information to a print-and-mail vendor is not a "communication" prohibited by § 1692c(b). The CFPB was created in 2012 with

the purpose of implementing and enforcing "federal consumer financial law consistently" and to ensure, among other things, "that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a). As part of this mandate, the CFPB was afforded the power to promulgate regulations implementing the FDCPA. *See* 15 U.S.C. § 1692l(b)(6). In October 2020, after over seven years of research, focus groups, public hearings, publications, and requests for comments and information, the CFPB published its final rule, known as "Regulation F," which is intended to implement the FDCPA. The final rule had an effective date of November 30, 2021. 85 Fed. Reg. 76734. The CFPB published a Supplemental Final Rule in January 2021 with the same effective date. 86 Fed. Reg. 5766 (collectively, the "Final Rule" or "Regulation F").

Regulation F condones the use of print and mail vendors. *Id*. For example, in response to a request from industry trade groups representing debt collectors, the CFPB adopted regulations authorizing debt collectors to provide its vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information. *Id.* at 5801. Moreover, the CFPB, like other regulators, evaluates debt collectors' vendor management compliance programs when conducting examinations or reviews.[5] The widespread,[6] open use and acceptance of vendors by the CFPB simply cannot be reconciled with the argument that a conveyance of information to a vendor is a "communication" in violation of 15 U.S.C. § 1692c(b). Print-and-mail vendors simply are not the focus of the FDCPA. *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The [FDCPA] is not aimed at . . . companies that perform ministerial duties

---

[5] See CFPB Debt Collection Examination Procedures at 5, https://files.consumerfinance.gov/f/201210_cfpb_debt-collection-examination-procedures.pdf

[6] The CFPB's Operations Study, which preceded Regulation F, demonstrated that over 85 percent of debt collectors surveyed reported using letter vendors. *Id.* at 5845 n. 446.

for debt collectors, such as stuffing and printing the debt collector's letters.") (citations omitted). Since Plaintiff has not alleged any communication to a third party, as contemplated and recognized by the CFPB, the Complaint fails and should be dismissed.

> **4. Plaintiff failed to comply with conditions precedent to the complaint by failing to provide presuit notice and an opportunity to cure.**

Plaintiff alleges Caliber shared information regarding Plaintiff and his past-due mortgage loan to third parties who subsequently printed and mailed correspondence to Plaintiff on Caliber's behalf in violation of § 1692c(b). Compl., ¶¶ 11, 13. Plaintiff however, never gave notice to Caliber of this claim and an opportunity cure as required by paragraph 20 of the Master Form Mortgage. Plaintiff's failure to provide the mandatory presuit notice merits dismissal of his complaint.

"The notice and cure provision of a mortgage bars a plaintiff's claims where it 'applies by its terms to [the] action.'" *Kurzban*, 2018 WL 1570370, at *2 (citations omitted); *see also Telecom Italia SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) (holding that a claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties"). "Thus, to determine whether the notice and cure provisions of the mortgage bar this action, the Court must decide whether the action 'arises from the [Defendant's] actions pursuant to [the mortgage],' or if the Defendants 'breached any provision of, or any duty owed by reason of' the mortgage." *Charles v. Deutsche Bank Nat'l Trust Co.*, No. 1:15-cv-21826, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (applying notice-and-cure language nearly identical to Plaintiff's mortgage).

"Courts in this district have routinely held that the plaintiff's FCCPA or FDCPA claims related to a mortgage contract and therefore were subject to the notice and cure provision in the contract." *Carner v. MGC Mortg., Inc.*, No. 19-61131-CIV, 2020 WL 7481170, at *2 (S.D. Fla. May 13, 2020) (citing, *e.g. Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, No. 0:15-CV-61972-WPD,

16

2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), order clarified, No. 0:15-CV-61972-WPD, 2016 WL 3163075 (S.D. Fla. Mar. 18, 2016); *Kurzban*, 2018 WL 1570370, at *2); *see also Sandoval v. Ronald R. Wolfe & Assocs., P.L.*, No. 16-61856-CIV-DIMITROULEAS, 2017 WL 244111, at *2-4 (S.D. Fla. Jan. 19, 2017); *Charles*, 2016 WL 950968, at *2-4. Further, "[c]ourts in this district consistently hold that a notice-and-cure provision in a mortgage applies to actions against a servicer. *Kurzban*, 2018 WL 1570370, at *3 (citing *Pierson v. Ocwen Loan Servicing, LLC*, No. 16-cv-62840, 2017 WL 634164, at *3 (S.D. Fla. Feb. 16, 2017); *Sotomayor*, 2016 WL 3163074, at *2-3; *Charles*, 2016 WL 950968, at *3-4).

In *Kurzban*, for example, the plaintiff brought a three-count complaint against a mortgage loan servicer alleging: (i) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") for failing to timely acknowledge receipt of a loss mitigation application; (ii) violation of the FDCPA by including time-barred debts and other improper fees in a notice of default; and (iii) violation of RESPA for failing to properly respond to a qualified written request and notice of error. *Kurzban*, 2018 WL 1570370, at *1. The court dismissed the plaintiff's complaint, finding his "RESPA and FDCPA claims clearly relate[d] to the mortgage":

> Indeed, Count I arises out of Plaintiff's attempts to modify the Mortgage to avoid foreclosure. Count II arises out of Defendant's notice to Plaintiff that the Mortgage is in default and Count III arises out of alleged errors in the default amounts. There can be no doubt that the notice-and-cure provision applies to these claims.

*Id.*, at *2.

In *Sotomayor*, the plaintiff alleged the loan servicer failed to provide an accurate payoff statement in violation of the Truth in Lending Act, 15 U.S.C. § 1639g ("TILA"), because the payoff statement included amounts for allegedly inflated property-inspection fees. *Sotomayor*, 2016 WL 3163074, at *1. The court dismissed the complaint, finding that the notice-and-cure provision "clearly" applied to the plaintiff's TILA claim "where the terms of the mortgage loan

17

contract provide[d] the basis" for the servicer conducting property inspections on properties whose loans are in default and charging the mortgage loan account fees for those property inspections. *Id.* at *2.

In *Sandoval*, the court found the plaintiff's RESPA, FDCPA, and FCCPA claims were all based upon a disputed $250 fee to prepare a motion to dismiss that would be necessary to resolve the mortgage foreclosure lawsuit against the plaintiff and the allegedly excessive service of process charges incurred in the foreclosure lawsuit. *Sandoval*, 2017 WL 3724584, at *3. The court found all of those claims arose out of the mortgage, the plaintiff's efforts to reinstate the mortgage, and plaintiff seeking information about reinstating the mortgage, because the terms and duties under the mortgage and note provided the basis for the servicer to charge and recover those fees, and dismissed the complaint for failure to allege compliance with a contractual condition precedent. *Id.* at *3-4.

As the foregoing case law demonstrates, courts routinely apply the notice-and-cure provision to statutory claims under the FDCPA, TILA, RESPA, etc. where the mortgage loan contract provides the basis for the conduct allegedly violating the statute. Plaintiff's FDCPA claim is that Caliber improperly shared information regarding his past-due mortgage loan to third-parties, specifically for loss mitigation purposes. The notice-and-cure provision applies to this claim because Plaintiff's mortgage loan contract "provides the basis" for Caliber's sharing of information and loss mitigation efforts and therefore "arises" from Caliber's actions "pursuant to [the mortgage]" in accordance with the foregoing case law. Specifically, the Note expressly authorized Caliber to release information to third parties and Plaintiff does not allege he opted out of Caliber's privacy policy. *See* Ex. 3, ¶ 25. In accordance with this authorization, Caliber advised Plaintiff in the privacy notices attached to the complaint that it would share information regarding

Plaintiff's loan to its servicing vendors for business purposes, including maintenance of Plaintiff's account. ECF No. 1-3, pp. 3, 6. Furthermore, Plaintiff agreed in the Note that in the event of a default, Caliber was entitled to pursue the loss mitigation efforts alleged in the complaint. *See* Ex. 3, ¶¶ 18(A); 22. Accordingly, the notice-and-cure provision of Plaintiff's mortgage applies to his FDCPA claim. Because Plaintiff failed to provide Caliber with notice of the alleged violation and a reasonable opportunity to cure the violation, the action should be dismissed.

## IV.   CONCLUSION

For these reasons, Caliber asks the Court to dismiss Plaintiff's complaint in its entirety with prejudice.

DATED this 30th day of June 2021

Respectfully submitted,

By: /s/ *Dale A. Evans Jr.*
Dale A. Evans Jr.
Florida Bar Number 98496
R. Keith Ustler
Florida Bar Number 103584
LOCKE LORD LLP
777 South Flagler Drive, Suite 215-East
West Palm Beach, FL 33401
Telephone: 561-833-7700
Facsimile: 561-655-8719
dale.evans@lockelord.com
keith.ustler@lockelord.com

Robert T. Mowrey
*Pro Hac Vice*
rmowrey@lockelord.com
Christopher M. Boeck
*Pro Hac Vice*
cboeck@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: 214-740-8000
Facsimile: 214-740-8800

*Counsel for defendant Caliber Home Loans, Inc.*

92465912