**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 9:21-CV-80929-DMM**

TERRY TANNENBAUM, on his own
behalf and on behalf of all others similarly
situated,

    Plaintiff,

v.

CALIBER HOME LOANS, INC., a
Delaware corporation,

    Defendant.

_____/

**DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO TEMPORARILY STAY PENDING MATTER WITH INCORPORATED MEMORANDUM OF LAW**

    Defendant Caliber Home Loans, Inc. ("Caliber") moves to temporarily stay this case because the Plaintiff's claims depend entirely upon a recent ruling from the Eleventh Circuit[1] that is the first of its kind among the Circuit Courts, dramatically extended liability under the existing law, and conflicted both with ubiquitous industry practice and current guidance from the governing federal agency. The appellee in that case has filed a petition for rehearing and rehearing en banc which has elicited approximately twenty amicus briefs from interested parties. Caliber seeks this stay in the interests of equity and efficiency during this temporary period to avoid incurring the significant expense of class action litigation and use of judicial resources should the Eleventh Circuit grant the petition for rehearing.[2]

---

[1] *Hunstein v. Preferred Collection & Management Services, Inc.*, No. 19-14434-HH (11th Cir. 2019).

[2] As detailed in Caliber's pending Motion to Dismiss, Plaintiff's claims fail despite the *Hunstein* ruling. However, because Plaintiff's Complaint is explicitly based upon the ruling in *Hunstein*, a revision or reversal of that ruling would indisputably impact or eliminate Plaintiff's pleaded claims.

## I.  INTRODUCTION

This Court has broad discretion to stay these proceedings pending the resolution of another case. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Eleventh Circuit Court of Appeals has explained that waiting for a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues of a case constitutes "at least a good . . . if not an excellent" reason to stay a potentially effected case. *Miccosukee Tribe of Indians of Florida v. South Florida Water Management Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

The instant case is based entirely upon a recent appellate decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021). See, Comp. ¶ 33. The appellee in *Hunstein* filed a petition for rehearing directed to the panel's decision on May 26, 2021, nearly two months ago. Caliber requests a moderate stay of this matter, including discovery, to allow for disposition of that petition, and if the petition is granted, until the rehearing is held and ruled upon.

## II.  FACTUAL BACKGROUND

Plaintiff brings a single claim for violation of 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), which prohibits debt collectors from communicating, in connection with the collection of any debt, with any person other than the consumer, except with the consumer's prior consent or when other exceptions outlined in the statute apply. Plaintiff alleges Caliber violated this provision by utilizing an outside print-and-mail vendor to send correspondence on Caliber's behalf. This suit, like hundreds of others, was filed shortly after the 11th Circuit Court of Appeals issued its surprising ruling in *Hunstein*.

Unlike prior rulings that applied § 1692c(b) to high-pressure debt collection techniques such as contacting a debtor's family members or employer, the *Hunstein* ruling—if it stands— would significantly impact a debt collector's ability to utilize the common, noncontroversial

2

business practice of out-sourcing certain clerical functions such as print-and-mail tasks (as well as taking certain actions that are expressly contemplated by the FDCPA and approved by the CFPB). The *Hunstein* court held that, based on the pleadings, circumstances, and stipulations in that case that: (i) a bare procedural violation of Section 1692c(b) stemming from a common communication with a third-party mailing vendor constituted a concrete injury sufficient to confer Article III standing at the motion to dismiss stage; and (ii) allegations that a debt collector transmitted loan-related information to a third-party mailing vendor are sufficient to state a claim under Section 1692c(b). 994 F.3d at 1348-52.

The appellee in *Hunstein* petitioned for rehearing and rehearing *en banc* on May 26, 2021. This petition challenges the threshold jurisdictional issue of whether a plaintiff has Article III standing to sue for a bare procedural violation of Section 1692c(b) and the court's conclusion that the use of third-party vendor is an actionable violation of Section 1692c(b). *See* Appellee's Pet. for Rehearing and for Rehearing En Banc, attached as **Exhibit A**. Following the Petition, nearly twenty amici were granted leave to file briefs in support of the petition. Arguments raised in these amicus briefs address, among other arguments, lack of Article III standing, interpretation of the FDCPA in conjunction with Regulation F (the FDCPA's implementing rule promulgated by the CFPB), and potential questions of the continued constitutionality of the FDCPA as a whole due to its newly discovered unreasonable restraint on commercial speech. The Eleventh Circuit has not yet ruled on the petition. Based on historical proceedings in which rehearing was granted by the Eleventh Circuit, the decision to rehear is typically made within 90 to 120 days from the filing of the petition. *See generally*, *En Banc Poll Orders*, UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT, https://www.ca11.uscourts.gov/enbanc-poll-orders (last visited July 22, 2021).

With regard to *Hunstein*, in particular, there is additional support for rehearing based on the Supreme Court's recent Article III standing decision in *Transunion LLC v. Ramirez*, 141 S.Ct. 2190 (2021). The Court stated in pertinent part:

> For the first time in this Court, the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is forfeited. In any event, it is unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. *See, e.g., Chalkley v. Atlantic Coast Line R. Co.*, 150 Va. 301, 326–328, 143 S.E. 631, 638–639 (1928). Nor have they necessarily recognized disclosures to printing vendors as actionable publications. *See, e.g., Mack v. Delta Air Lines, Inc.*, 639 Fed.Appx. 582, 586 (CA11 2016). Moreover, even the plaintiffs' cited cases require evidence that the defendant actually "brought an idea to the perception of another," Restatement of Torts § 559, Comment a, p. 140 (1938), and thus generally require evidence that the document was actually read and not merely processed, *cf. Ostrowe v. Lee*, 256 N.Y. 36, 38–39, 175 N.E. 505, 505–506 (1931) (Cardozo, C. J.). That evidence is lacking here. In short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing.

141 S.Ct. 2190, 2210 n.6. The *TransUnion* opinion directly addressed the common business practice of outsourcing print-and-mail tasks at issue in *Hunstein* and forecasts the Supreme Court's perspective with regard to the Article III issue.

Plaintiff's case is based upon the exact theory at issue in *Hunstein*. If the Eleventh Circuit grants the petition for rehearing and changes its opinion, that change will materially impact this case and might render the conduct at issue in this case non-actionable altogether. Accordingly, Caliber seeks a brief stay of this matter pending a resolution of the petition for rehearing in *Hunstein*, and if the petition is granted, until the rehearing is held and ruled upon. To be clear, Caliber is not seeking an indefinite delay of this case or to place it in state of "suspended

animation" but, rather, is seeking a short, readily-definable stay based upon the pending rehearing which will be ended by one decision from the controlling appellate court.

### III.     MEMORANDUM OF LAW

#### A. LEGAL STANDARD

The Court has broad discretion to stay this case "incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis*, 299 U.S. at 254; *see Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). In exercising this discretion, courts historically consider: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the [C]ourt." *Ring v. City of Gulfport*, No. 8:20-CV-593-T-33CPT, 2020 WL 3895435, at *2 (M.D. Fla. July 10, 2020). Another factor which some courts address is whether the proponent of the stay would suffer a hardship or inequity if forced to proceed. *Garmendiz v. Capio Partners, LLC*, No. 8:17-CV-987-EAK-AAS, 2017 WL 3208621, at *1 (M.D. Fla. July 26, 2017).

"[T]he Eleventh Circuit has approved of stays pending appellate resolution of a related case, especially where the related matter is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Stoll v. Musculoskeletal Inst., Chartered*, No. 8:20-CV-1798-CEH-AAS, 2021 WL 632622, at *2 (M.D. Fla. Feb. 18, 2021) (*citing Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)). Indeed, courts routinely stay cases for this very reason. *See, e.g., Stoll*, 2021 WL 632622, at *2; *Ring*, 2020 WL 3895435, at *4; *Pinares v. United Techs. Corp.*, No. 10-80883-CIV, 2019 WL 8129287, at *3 (S.D. Fla. Feb. 12, 2019); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 8:10-CV-713-T-30AEP, 2010 WL 3632714, at *2 (M.D. Fla. Sept. 14, 2010); *Abbott v. United*

*States*, No. 10-20635-CR, 2018 WL 8899341, at *1 (S.D. Fla. Sept. 4, 2018), report and recommendation adopted, No. 16-22985-CIV, 2018 WL 8899679 (S.D. Fla. Sept. 20, 2018); *Pena v. Meade*, No. 20-24560-CIV, 2020 WL 7641054, at *1 (S.D. Fla. Dec. 23, 2020).

### B. ARGUMENT

Caliber requests the Court to stay this case based upon the foregoing precedent. Each of the factors for granting a stay set forth in *Ring* and *Garmendiz* favor a stay of this case. First, the case is at an early stage, with the pleadings open and only recently being assigned to Magistrate Judge Matthewman for full consideration. *See Ring*, 2020 WL 3895435, at *2. Discovery has only just commenced[3] and no depositions have been coordinated. Second, no party will be prejudiced by the requested stay. The disposition of the *Hunstein* will not negatively impact future discovery or create a tactical disadvantage for the Plaintiff or the proposed class. Plaintiff and any proposed class have a vested interest in the outcome of the *Hunstein* appeal as well since the underlying allegations are heavily dependent upon the final disposition of that dispute. In that regard, the parties are on the same footing if a stay is granted and there would be no undue prejudice imposed by a temporary and readily-definable stay. This is not a situation in which the requested stay would cause the claims to indefinitely stagnate. The stay "would end with one ruling by the Eleventh Circuit, a court that would handle the appeal expediently. . . ." *Pinares*, 2019 WL 8129287, at *2; *see also Ring*, 2020 WL 3895435, at *4. There is "no indication that the appeal will take an unusually lengthy amount of time to resolve." *Ring*, 2020 WL 3895435, at *4. The proposed stay is not indefinite or immoderate. As indicated above, the Eleventh Circuit traditionally rules upon petitions for rehearing between 90 and 120 days from the date of filing.

---

[3] Plaintiff served a request for production and set of interrogatories on August 8, 2021. Caliber's responses are not yet due.

The Petition in *Hunstein* was filed just over 60 days ago so the Court can define the length of the stay and fashion certain safeguards within its order to mitigate the impacts of the brief stay.

Plaintiff may argue a stay would have a prejudicial effect on the availability of discovery and information to support this suit. Caliber acknowledges its obligations to preserve evidence and would posit the vast majority of germane information would be business records and testimony thereon. This is not a case where eye witness accounts or the memories of a fact witness may fade over time. For that reason any prejudice Plaintiff would sustain would pale in comparison to the prejudice Caliber would sustain in litigating a class action only for it to be void for lack of standing. *See Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, 2016 WL 9526468, at *2 (S.D. Fla. Feb. 8, 2016) (entering stay when movant acknowledged discovery obligations and risk of degradation of evidence was low).

As to the third and fourth factors, a stay will undoubtedly simplify the issues and reduce the burden on the parties as well as the Court. The Eleventh Circuit's final decision in *Hunstein* may establish case-dispositive, binding precedent that further defines the contours of Plaintiff's claims or may extinguish the newly-created claims entirely without the need for the Court or the parties to expend further time or resources. A stay will allow the Court "to avoid issuing a dispositive [o]rder in the midst of an uncertain legal environment." *Jacobs v. Ocwen Loan Servicing, LLC*, No. 16-62318-Civ-Scola, 2017 WL 1733855, at *2 (S.D. Fla. April 14, 2017) (quoting *Coatney v. Synchrony Bank*, No. 16-cv-389-Orl-22TBS, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016)). As said throughout, this suit is based entirely on the theories underpinning the *Hunstein* decision. Any change in that law would thus materially and directly impact this related matter. As such, a stay would promote judicial efficiency and reduce the burdens on all involved.

As for hardship, Courts have found litigation expense sufficient to demonstrate actual hardship to justify a stay. *See, e.g., Rajput*, 2016 WL 6433150 at *4 ("any discovery and/or motions practice performed prior to the D.C. Circuit's disposition of ACA International would be at risk of being rendered moot if the Court of Appeals invalidates the FCC's July 2015 Declaratory Ruling."); *Williams*, 2016 WL 6905382 at *3 (finding that a stay "could lead to reduced discovery on the issue of whether defendant used an ATDS to contact plaintiffs. Such a reduction in discovery would reduce the financial hardship defendant would sustain defending issues that could be rendered moot by the D.C. Circuit Court of Appeals' decision."). *Tyler v. Nationstar Mortgage*, Case No. 4:15-cv-532-WS-CAS, 2016 WL 420284 at *1 (N.D. Fla. Jan. 15, 2016) (holding that a stay "would limit what might prove to be unnecessary expenditures of time and resources on discovery" and "would promote judicial economy"); *Errington v. Time Warner Cable*, No. 2:15-cv-02196-RSWL(DTB), 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (staying case pending the decision in ACA International because "Defendant may suffer hardship in conducting discovery").

Caliber will undoubtedly incur actual harm in the form of time and expense incurred to litigate this case if a stay is not granted. While some discovery has been propounded in this case, no discovery has been completed as to the relationship between Caliber and its vendors and any purported communications between them concerning Plaintiff's loan. Nor have any party depositions been conducted. Highly technical discovery may require experts and would thus impose a costly burden on both parties. But that discovery could be rendered unnecessary (in whole or in part) if the 11th Circuit rehears *Hunstein* and changes its holding. The case of *Miccosukee Tribe of Indians of Florida v. South Florida Water Management Dist.*, 559 F.3d 1191 (11th Cir. 2009) is also instructive. In that case, the Eleventh Circuit indicated its approval of the

district court's order staying the case pending review of a similar case between the parties already on appeal with the Eleventh Circuit. *Id*. at 1194. The Circuit Court noted there were extensive similarities between the issues in the cases and found that the interests of justice and judicial economy, including avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources would be promoted by granting a stay of the proceeding. *Id*. The stay at issue was to last for a year or until the conclusion of the appeal, whichever came first. *Id*. The Eleventh Circuit approved of the stay, going so far as to say the grounds were "at least good" if not "excellent," *Id*. at 1198, but ultimately found the order was not reviewable and remanded the case back to the district court. *Id*. at 1200.

Plaintiff's cause of action here is a bare statutory breach under a theory first endorsed in *Hunstein*. If the *Hunstein* panel decision is withdrawn or amended it will obviously impact this case. For example, if the Eleventh Circuit finds there is no Article III standing in *Hunstein,* there would be no standing for this suit either and all the effort and orders performed in this case would be for naught. Likewise if the 11th Circuit finds that the use of third party mailing vendors to perform ministerial acts is not a violation of 1692c(b), there would be no actionable conduct at issue in this case—Plaintiff's Complaint is based solely on purported communications with these types of vendors. While the parties in these matters may not be the same the underpinning facts and law are directly on point. The two cases are unquestionably related and a stay of this matter would, as in *Miccosukee*, provide clarity and resolution of the controlling law, shape the bounds of the claims at issue, and potentially avoid inconsistent rulings and duplicated litigation.

## IV. CONCLUSION

WHEREFORE, for these reasons defendant Caliber Home Loans, Inc. respectfully requests that the Court grant this Motion, stay this case until the Eleventh Circuit makes a

9

determination on the pending Petition for Rehearing, and if that Petition is granted, until the rehearing is held and ruled upon, and grant any further relief the Court deems just and appropriate.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3), counsel for Caliber has conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, and Plaintiff's counsel opposes the relief requested in this Motion.

DATED this 26th day of July 2021.

        Respectfully submitted,

By: */s/ R. Keith Ustler*
    Dale A. Evans Jr.
    Florida Bar Number 98496
    R. Keith Ustler
    Florida Bar Number 103584
    LOCKE LORD LLP
    777 South Flagler Drive, Suite 215-East
    West Palm Beach, FL 33401
    Telephone: 561-833-7700
    Facsimile: 561-655-8719
    dale.evans@lockelord.com
    keith.ustler@lockelord.com

    Robert T. Mowrey
    *Pro Hac Vice*
    rmowrey@lockelord.com
    Christopher M. Boeck
    *Pro Hac Vice*
    cboeck@lockelord.com
    LOCKE LORD LLP
    2200 Ross Avenue, Suite 2800
    Dallas, Texas 75201
    Telephone: 214-740-8000
    Facsimile: 214-740-8800

    Counsel for defendant Caliber Home Loans, Inc.

93739450