# EXHIBIT A

Case No. 19-14434-HH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

RICHARD HUNSTEIN

Plaintiff-Appellant

v.

PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC.

Defendant-Appellee

On Appeal from the United States District Court for the
Middle District of Florida
Case No. 8:19-cv-00983-TPB-TGW

---

**APPELLEE PREFERRED COLLECTION AND MANAGEMENT SERVICES,
INC.'S PETITION FOR REHEARING AND FOR
REHEARING EN BANC**

---

Richard J. Perr, Esquire
Kaufman Dolowich & Voluck LLP
1600 JFK Blvd., Suite 1030
Philadelphia, PA 19103
215-501-7002
rperr@kdvlaw.com

Robert A. Vigh, Esquire
Solomon, Vigh & Springer, P.A.
1702 N. Florida Ave.
Tampa, FL 33602
813-229-0115
rvigh@svslawfirm.com

**Richard Hunstein v. Preferred Collection and Management Services, Inc. –
Case No. 19-14434-HH**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT (CIP)**

Appellee, Preferred Collection and Management Services, Inc. ("Preferred"),
through its undersigned counsel, and in accordance with Rule 26.1(a) of the Federal
Rules of Appellate Procedure and 11th Cir. R. 26.1-2(d), herein discloses all trial
judges, attorneys, persons, associations of persons, firms, partnerships, or
corporations that have an interest in the outcome of this case or appeal, including
subsidiaries, conglomerates, affiliates, parent corporations, any publicly held
corporation that owns 10% or more of the party's stock, and other identifiable legal
entities related to a party.

1. **Barber, Thomas -** United States District Judge, Middle District of Florida**,**
   Tampa Division

2. **Bonan, Thomas** – Appellant's Counsel

3. **Goldberg, Philip R.** – Principal Attorney at Seraph Legal P.A.

4. **Hunstein, Richard** – Appellant

5. **Kaufman Dolowich & Voluck LLP** - Firm representing Appellee

6. **Perr, Richard J.** – Appellee's Co-Lead Counsel

7. **Preferred Collection and Management Services, Inc. -** Appellee

8. **Seraph Legal, P.A. -** Firm representing Appellant

**Richard Hunstein v. Preferred Collection and Management Services, Inc. –
Case No. 19-14434-HH**

**9. Solomon, Vigh & Springer, P.A. -** Firm representing Appellee

**10. Vigh, Robert -** Appellee's Co-Lead Counsel

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure
and 11th Cir. R. 26.1-3(b), the undersigned further certifies that there is no publicly
traded company or corporation with an interest in the outcome of this case.

**C 2** of **2**

## RULE 35 STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel's decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020); and *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc).

/s/ Richard J. Perr
Attorney of Record for
Appellee-Defendant Preferred
Collection and Management
Services, Inc.

## TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT (CIP) ....................................................................C-1

RULE 35 STATEMENT OF COUNSEL.................................................................. i

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iv

STATEMENT OF THE ISSUE ASSERTED TO MERIT EN BANC
CONSIDERATION ...................................................................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF
THE CASE.................................................................................................................1

STATEMENT OF ANY FACTS NECESSARY REGARDING ARGUMENT OF
THE ISSUES.............................................................................................................3

ARGUMENTS AND AUTHORITIES ....................................................................3

     THE PANEL DISREGARDED EXISTING PRECEDENT TO HOLD
     THAT THE ALLEGED VIOLATION WAS A CONCRETE AND
     PARTICULARIZED HARM SUFFICIENT TO CONFER ARTICLE III
     STANDING. .................................................................................................3

          A.  The Panel Opinion Deviated from Circuit Precedent. ...................4

          B.  The Conduct Complained of by Plaintiff Does Not Constitute
             Public Disclosure. ...........................................................................7

          C.  The Electronic Transmission of Data to a Private Server
             Maintained by an Agent of a Debt Collector Does Not Implicate a
             "Harm Congress Has Identified." ..................................................11

ii

1. Congress Expressly Allows Telegrams – the 1977 Equivalent of Letter Vendors......................................................................12

2. The Colorado Supreme Court Has Held Use of Letter Vendors Presents No Harm to Consumers. ...........................................13

3. The CFPB Has Found No Consumer Injury in Use of Letter Vendors. ..................................................................................15

CONCLUSION.......................................................................17

CERTIFICATE OF COMPLIANCE.......................................18

CERTIFICATE OF SERVICE ...............................................19

iii

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Flood v. Mercantile Adjustment Bureau*,
  176 P.3d 769 (Colo. 2008) ..................................................................... 13, 14, 16
*Hammer v. Sorensen*,
  824 Fed. Appx. 689 (11th Cir. 2020) .................................................10
*Leach v. Dist. Bd. of Trs. of Palm Beach*,
  244 F. Supp. 3d 1334 (S.D. Fla. 2017) .............................................10
*Lewis v. Snap-On Tools Corp.*,
  708 F. Supp. 1260 (M.D. Fla. 1989) ..................................................10
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................4
*Mack v. Delta Air Lines, Inc.*,
  639 F.App'x 582 (11th Cir. 2016) ......................................................9
*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) ....................................................... i, 6, 7
*Nicklaw v. CitiMortgage, Inc.*,
  839 F.3d 998 (11th Cir. 2016) ................................................... i, 3, 5, 7
*Oppenheim v. I.C. Sys., Inc.*,
  695 F.Supp.2d 1303 (M.D.Fla. 2010), aff'd, 627 F.3d 933 (11th Cir. 2010) ....... 10
*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ............................... i, 4, 5, 6, 8
*Stoddard v. Wohlfahrt*,
  573 So. 2d 1060 (Fla.Dist.Ct.App.1991) ...........................................10
*Trichell v. Midland Credit Mgmt., Inc.*,
  964 F.3d 990 (11th Cir. 2020) ....................................................... i, 5
*West v. Costen*,
  558 F. Supp. 564  (W.D. Va.1983) ....................................................13
*Williams v. City of Minneola*,
  575 So. 2d 683 (Fla. 5th DCA 1991) ...................................................9

**Statutes**

15 U.S.C. §1692 .......................................................................................1
15 U.S.C. §1692(a) ................................................................................11
15 U.S.C. §1692(b) ................................................................................12

iv

15 U.S.C. §1692b(5) ........................................................................12
15 U.S.C. §1692c(b) .................................... 1, 2, 3, 4, 8, 11, 13, 17
15 U.S.C. §1692e ...............................................................................5
15 U.S.C. §1692(e) .........................................................................11
15 U.S.C. §1692f. ........................................................................... 1
15 U.S.C. §1692f(5) ........................................................................12
15 U.S.C. §1692f(8) ........................................................................12
§ 12-14-105(2) (2007)...........................................................……13
Fla. Stat. Ann. §559.72(5)...........................................................1, 3

## Other Authorities

62A Am. Jr. 2d Privacy §79...........................................................8
77 C.J.S. Right of Privacy and Publicity §32 ................................8
Colorado Attorney General Brief................................................ 14, 15
Restatement (Second) of Torts §652D (1977) ...............................8
Webster's II New Riverside Dictionary, (1984)...........................8

## Rules

Fed. R. App. P. 35(b) ......................................................................2
Fed. R. App. P. 40(a) ......................................................................2
Fed. R. Civ. P. 12(b)(1)...................................................................2
Fed. R. Civ. P. 12(b)(6)...................................................................2

## Regulations

12 C.F.R. § Pt. 1006, *et seq* ........................................................15
12 C.F.R. § Pt. 1006, App. B (effective November 30, 2021) ................15
Debt Collection Practices (Regulation F), 85 Fed. Reg. 76734-01 (Nov. 30, 2020)
    (to be codified at 12 C.F.R. § 1006)...........................................15
Debt Collection Practices (Regulation F), 86 Fed. Reg. 5766-01 (Jan. 19, 2021) (to
    be codified at 12 C.F.R. § 1006)........................................... 15, 16
FTC Official Staff Commentary § 805(b)(3), 53 Fed. Reg. 50097
(Dec. 13, 1988)................................................................................14
S. REP. 95-382, 1977 U.S.C.C.A.N. 1695 ................................ 11,16

## STATEMENT OF THE ISSUE ASSERTED TO MERIT EN BANC CONSIDERATION

The panel's opinion deviated from the precedent of the Supreme Court of the United States and this Circuit in holding that an alleged statutory violation of §1692c(b) of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA"), constituted a "concrete injury" sufficient to confer Article III standing for Appellant, Richard Hunstein ("Plaintiff"). The panel contorted this Circuit's existing precedent in order to analogize the alleged claim to an unrelated common law claim. The allegation at issue here only involved an automatic, ministerial, electronic transmission of data privately to an agent of a debt collector for the sole purpose of facilitating a communication to the consumer by the debt collector so that a letter could be mailed to Plaintiff. En banc review is necessary to conform this case with this Circuit's existing precedent.

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Plaintiff filed a lawsuit on April 24, 2019, alleging that Preferred violated Sections 1692c(b) and 1692f of the FDCPA and Section 559.72(5) of the Florida Statutes when it "sent information regarding Mr. Hunstein and the Debt" to CompuMail, a mail vendor and agent of Preferred. (Doc. 1, ¶¶ 16-18, 20-36, pp. 3-6). Plaintiff alleges that CompuMail then "populated some or all of this information into a pre-written template, printed, and mailed" a letter to Plaintiff. (Doc. 1, ¶ 19,

1

p. 3).  Plaintiff alleges that the "sending of an electronic file containing information about . . . [a]  debt to a mail house is therefore a communication . . . in connection with the collection of a [d]ebt . . ."  (Doc. 1, ¶¶ 21-22, p. 4).

Preferred moved to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 6).  On October 29, 2019, the district court granted Preferred's motion finding that Plaintiff "has not and cannot sufficiently allege that the communication with the mail house violated §1692c(b) because the communication does not qualify as a communication 'in connection with the collection of a debt.'"  (Doc. 20 at 5-8).

Plaintiff filed an appeal on November 6, 2019. On April 21, 2021, the panel issued its opinion in this matter reversing the district court judgment and remanding the matter for further proceedings.  On May 5, 2021, the panel issued an errata page regarding three minor grammatical corrections.  (Corrected Opinion attached as Exhibit A (hereinafter "Op.")).

Pursuant to Federal Rules of Appellate Procedure 35(b) and 40(a), Preferred respectfully seeks a panel rehearing or rehearing en banc of the panel's decision issued on April 21, 2021.

## STATEMENT OF ANY FACTS NECESSARY REGARDING ARGUMENT OF THE ISSUES

Preferred mailed a letter to Plaintiff dated January 29, 2019 regarding an outstanding obligation owed by him. (Doc. 1, ¶¶ 12-15, p. 3; Doc. 1-4). Preferred electronically delivered data to a mail vendor for the sole purpose of facilitating the preparation and mailing of the letter to Plaintiff. (Doc. 1, ¶¶ 16-19, p. 3; Doc. 1-4). Plaintiff alleges that Preferred's transmission of information to CompuMail violates 15 U.S.C. §1692c(b), 15 U.S.C. §1692(f), and Section 559.72(5), Florida Statutes.

Preferred's transmission to its own agent is sent directly to computer servers and the data therein is not viewed by human eyes nor published to the public. CompuMail compiles the data electronically and populates the data into fields in a pre-formed letter for the limited purpose of mailing the letter directly to Plaintiff.

## ARGUMENT AND AUTHORITIES

## THE PANEL DISREGARDED EXISTING PRECEDENT TO HOLD THAT THE ALLEGED VIOLATION WAS A CONCRETE AND PARTICULARIZED HARM SUFFICIENT TO CONFER ARTICLE III STANDING.

This Court must grant en banc review to correct the panel's erroneous finding that Plaintiff's allegations give rise to Article III standing, which is in direct contrast to the precedent of the Supreme Court of the United States and the precedent of the United States Court of Appeals for the Eleventh Circuit. *Compare Nicklaw*, 839 F.3d at 1002 ("[T]he relevant question is whether Nicklaw was harmed when this statutory right was violated."), *with* Op. at 22 ("[W]e doubt that the Compumails of

3

the world routinely read, care about, or abuse the information that debt collectors transmit to them.").  Although the panel rightly held Plaintiff did not suffer a tangible harm or a risk of real harm (Op. at 5-7), it nonetheless concluded that Plaintiff alleged a concrete injury due to §1692c(b)'s close relationship to the common-law tort of public disclosure of private facts.  Op. at 11-12.  The closeness of the relationship does not hold up to scrutiny.

### A.   **The Panel's Opinion Deviated from Circuit Precedent.**

The Supreme Court's decision in *Spokeo, Inc. v. Robins* held that, even in the context of a statutory violation, Article III standing requires a concrete injury. *Spokeo*, 136 S.Ct. at 1549.  The Court noted that "to establish [an] injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and "actual or imminent, not conjectural or hypothetical."  *Id*. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.*  While "[p]articularization is necessary to establish injury in fact . . . it is not sufficient.  An injury in fact must also be 'concrete.'"  *Id*.  The Court noted, "[a] 'concrete' injury must be 'de facto'; that is, it must *actually* exist."  *Id*. (emphasis added).

The first test asks "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for

a lawsuit in English or American Courts.'" *Id*. at 1549.  The second test looks to Congressional intent for the redress of injuries.  *See id.*

In *Nicklaw*, this Court rejected the position that a plaintiff had suffered a concrete injury simply because the law had created "a right to have a certificate of discharge recorded in a timely manner." *Nicklaw*, 839 F.3d at 1002.  Instead, this Court explained that the relevant question was whether the **plaintiff himself** "was harmed when this statutory right was violated." *Id.*  This Court in *Nicklaw* – much like *Spokeo* – reinforced the common law tradition of "no harm no foul," which sits at the core of Article III standing.

In *Trichell,* the plaintiffs brought §1692e claims based on debt collection letters that encouraged payment on time-barred debts without notifying the consumer that payments may revive the statute of limitations. *Trichell*, 964 F.3d at 995.  This Court found that the "judgment of Congress" disfavored the plaintiffs as the "serious harms" to which the statute was directed were a "far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead." *Id.* at 999.  The "FDCPA's narrow findings and cause of action affirmatively cut against" the plaintiffs and suggested "no congressional judgment firm enough" to break against the common law traditions that found that "misrepresentations" were "not actionable absent reliance and ensuing damages." *Id.* at 1000.

In *Muransky*, this Court vacated a district court's order because the plaintiff lacked Article III standing where he had suffered no harm. *Muransky*, 979 F.3d at 935-36. The Court explained that a "lot of ink has been spilled to explain what concrete means, but the best word may also be the simplest – 'real.'" *Id.* at 925 (citing *Spokeo*, 136 S.Ct. at 1548). The Court noted that "statutory violations do not - cannot - give us permission to offer plaintiffs a wink and a nod on concreteness. Plaintiffs must show, and the courts must ensure, that an alleged injury is concrete, or else we have no jurisdiction to consider it." *Id.* (citing *Spokeo*, 136 S.Ct. at 1548-49). "[W]hile some statutory violations, by their very nature, will be coextensive with the harm that Congress was trying to prevent, labels do not control" the analysis. *Id.* at 930.

The Court also rejected the idea that the traditional tort of "breach of confidence" was analogous to the alleged violation. The Court explained that a breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Id.* at 932 (citations omitted). The Court explained that the alleged violation at issue involved no "'disclosure to a third party'" because "Muransky was handed a receipt that bore his own information" and did not allege that anyone else ever saw it. *Id.* Describing that "act as a 'disclosure' would distort the meaning of the term." *Id.* "Because no information was disclosed, and no confidential

6

relationship existed, the relationship between Godiva's conduct and a breach of confidence is anything but 'close'. . ." *Id*.

The panel's decision here is inapposite to these clear precedents. The panel did not analyze whether Plaintiff's alleged injury was "particularized" or "personal." In fact, it explicitly professed doubt that the harm occurred or would likely occur. ("We recognize, as well, that these costs may not purchase much in the way of 'real' consumer privacy, as we doubt that the Compumails of the world routinely read, care about, or abuse the information that debt collectors transmit to them."). Op. at 22. For these reasons, a full Court must rehear this matter to establish uniform precedent in this Circuit.

### B.   The Conduct Complained of by Plaintiff Does Not Constitute Public Disclosure.

The panel incorrectly determined that Plaintiff's allegations bore a close relationship to the common law tort of "public disclosure of private facts." The panel's opinion was flawed in that it omitted whether Plaintiff's specific allegations were the type traditionally guarded by the courts. Such analysis is in contrast to *Muransky*. The panel failed to follow the mandate of *Spokeo*, adopted by this Court in *Nicklaw*, that the relevant question is ***whether the plaintiff himself*** was harmed when the statutory right was violated. *See Nicklaw*, 839 F.3d at 1002.

The panel provided a perfunctory reference to the hornbook definition of public disclosure of private facts - "'[o]ne who gives publicity to a matter concerning

the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'"   Op. at 9 (quoting Restatement (Second) of Torts §652D (1977); 77 C.J.S. Right of Privacy and Publicity §32; 62A Am. Jr. 2d Privacy §79)).   But it then rushed to conclude that because §1692c(b) "prohibits a debt collector from 'communicat[ing]' with any but a few persons or entities 'in connection with the collection of any debt'" that it bore a "'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts.'"   Op. at 10 (quoting *Spokeo*, 136 S. Ct. 1549).

The panel did not examine whether Plaintiff's specific allegations were the type that bore any relationship to a harm protected at common law.   If it had, as mandated by *Spokeo* and *Nicklaw*, the panel could not possibly have determined that the alleged violative conduct was the type that is "traditionally" protected.   On the face of the allegations, there is no connection between the electronic transmission of data to a private server maintained by an agent of the debt collector and the tort of "public disclosure of private facts."   Public means "pertaining to, or affecting, the community or the people as a whole."   *Public*, *Webster's II New Riverside Dictionary*, 565-66 (1984).   Likewise, "publicity" is defined generally as "[p]ublic attention or notoriety."   *Id.*

8

Plaintiff's cause of action is premised entirely on Preferred's ministerial, electronic transmission of information to its own agent for the singular purpose of facilitating the mailing of a letter from Preferred to Plaintiff. The electronic transmission of information to a machine is the antithesis of "public" disclosure. The consumer has the only set of human eyes that sees the information actually contained in the letter.

The panel's determination that the transmission of information to a mail merge machine owned by an agent of the debt collector is akin to "public" disclosure directly contrasts with this Court's previous holding in *Mack v. Delta Air Lines, Inc.*, 639 F.App'x 582 (11th Cir. 2016). In *Mack*, this Court reviewed the district court's dismissal of the plaintiffs' various claims, including a state law claim for libel. *Id.* at 586. It held that the plaintiffs had failed to sufficiently allege that the letter had been "'published'" because "[n]either the alleged communication to Delta's top management and lawyer **nor the communication to a third-party printer** constituted 'publication' for purposes of stating a claim for libel under Georgia law." *Id.* (internal citations omitted) (emphasis added). Here, as in *Mack*, the transmission of information to a private server maintained by an agent of the transmitting entity is not the type of conduct protected by traditional common law. "Publication" requires that many people are provided information; the transmission here was to a computer server and seen by no one. *See Williams v. City of Minneola*, 575 So. 2d

9

683, 689 (Fla. Dist. Ct. App. 1991) ("[T]he publicity given to private facts must be to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge."); *Lewis v. Snap-On Tools Corp.*, 708 F. Supp. 1260, 1261-62 (M.D. Fla. 1989) (no publication where company allegedly told "large numbers of persons" that plaintiff was stealing their payments); *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1341 (S.D. Fla. 2017) (providing information regarding plaintiff's disability to twenty classmates not sufficient for publication).

Besides failing to support the element of publication under common law, there was nothing to show that the transmission at issue is "highly offensive to a reasonable person." This fact is seemingly acknowledged in the panel's opinion. Op. at 6-7. "'The threshold test to be followed . . . is whether such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Oppenheim v. I.C. Sys., Inc.*, 695 F.Supp.2d 1303, 1308 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (quoting *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. Dist. Ct. App. 1991)).

As recognized by this Court in *Hammer v. Sorensen*, 824 Fed. Appx. 689, 696 (11th Cir. 2020), Florida law requires that a successful claim for invasion of privacy – like public disclosure of private facts – demonstrate behavior so far beyond the bounds of decency that "no reasonable person in a civilized society should be

expected to endure it." (internal citation omitted). Yet, the panel compared invasion of privacy to Plaintiff's §1692c(b) claim despite seemingly acknowledging that Plaintiff could not demonstrate the requisite "outrageous" and "highly offensive" conduct that one could not be "expected to endure." The panel's tortured analogy to public disclosure of private facts falls flat when at least two of its four elements are missing, highlighting how significantly the panel's decision is at odds with existing Circuit precedent.

### C. The Electronic Transmission of Data to a Private Server Maintained by an Agent of a Debt Collector Does Not Implicate a "Harm Congress Has Identified."

The panel's attempt to support Article III standing by concluding "'invasions of individual privacy'" is "one of the harms against which the statute is directed" is flawed. Op. at 10. "Invasion of privacy" is not one of the enumerated purposes of the FDCPA. The full text of the section quoted by the panel provides:

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices** contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

15 U.S.C. §1692(a) (emphasis added). The FDCPA was enacted to prohibit abusive debt collection practices that can lead to an invasion of privacy "without imposing unnecessary restrictions on ethical debt collectors." 15 U.S.C. §1692(e); S. REP. 95-382, 1, 1977 U.S.C.C.A.N. 1695, 1696. The ministerial, electronic transmission

11

of data to an agent of the debt collector for the purpose of facilitating the mailing of a letter to the consumer is not abusive.

### 1. *Congress Expressly Allows Telegrams – the 1977 Equivalent of Letter Vendors*.

Not every disclosure of information to a third-party is actionable under the FDCPA. Section 1692(b) permits debt collectors to disclose certain information to third parties for the purpose of acquiring location information, Section 1692b(5) recognizes communication can be "effected by the mails or **telegram**," and Sections 1692f(5) and (8) also recognize the use of telegrams as an acceptable method of communication to consumers. In directly referencing a debt collector's use of "mails or telegram," Congress has set forth its express approval of the ministerial use of "third-party" agents for the purpose of facilitating non-abusive communications with a consumer.

The conduct complained of by Plaintiff is the transmission of data to computer servers maintained by an agent of the debt collector for the purpose of facilitating the mailing of a letter to the consumer. This is identical to a debt collector using Western Union in 1977 to send a telegram to a consumer – activity which is expressly sanctioned by Congress. Both the letter vendor and Western Union are performing the exact same lawful function for the debt collector.

### 2. The Colorado Supreme Court Has Held Use of Letter Vendors Presents No Harm to Consumers.

In *Flood v. Mercantile Adjustment Bureau*, 176 P.3d 769 (Colo. 2008), the Colorado Supreme Court, sitting en banc, was presented with an identical claim that the use of an automated mailing service violated the Colorado state equivalent of § 1692c(b). The plaintiff alleged that the debt collector violated Section 12-14-105(2) of Colorado's Fair Debt Collection Practices Act which prohibits communications between a debt collector and third parties. *Id.* at 777.

The court concluded that Colorado's General Assembly did not intend for Section 12-14-105(2) to "prohibit a debt collector from using an automated mailing service." *Id.* The court analyzed §1692c(b) of the FDCPA, which was "nearly identical" and noted the purpose of §1692c(b), which is to "'protect a consumer's reputation and privacy, as well as to prevent loss of jobs resulting from a debt collector's communication with a consumer's employer concerning the collection of a debt.'" *Id.* (citing *West v. Costen*, 558 F. Supp. 564, 575 (W.D. Va. 1983)). The court found that the debt collector "utilized an entirely automated printing and mailing service" and "electronically transmitted the information included in its collection communications to Unimail." *Id.* "Unimail then printed the collection communications, which were mechanically stuffed into envelopes." *Id.* The court agreed with the determination of the lower court that the "use of such a highly automated procedure did not violate Section 12–14–105(2) because it did not

13

threaten the consumer with the risk of being coerced or embarrassed into paying a debt because the debt collector contacted an employer, family member, friend, or other third party." *Id.* The court found that the debt collector did not engage in a prohibited third-party communication because "the use of an automated mailing service, such as Unimail, **by a debt collector is a *de minimis* communication with a third party that cannot reasonably be perceived as a threat to the consumer's privacy or reputation**." *Id.* (emphasis added) (citing FTC Official Staff Commentary § 805(b)(3), 53 Fed. Reg. 50097, 50104 (Dec. 13, 1988), which states "'incidental contacts' between a debt collector and a telephone company for the purpose of transmitting information to the consumer do not constitute an impermissible communication with a third party").

The Colorado Attorney General explained that collection agencies "may hire computer programmers, data entry staff, receptionists, bookkeepers and janitors" and while communications "with these individuals may be in connection with the collection of debts by facilitating that process . . . it would be absurd to suggest that such communications are prohibited." Brief for Colorado Attorney General, as Amicus Curiae Supporting Respondent, *Flood v. Mercantile Adjustment Bureau*, 176 P.3d 769 (Colo. 2008), 2007 WL 2322277, at *13 (Colo.) (Appellate Brief). Whether an agency uses "its own in-house 'W-2' employees rather than . . . independent contractors" should not impact the analysis, the Attorney General

argued, because if "a collection agency 'engages' or contracts with the third-parties to perform the same activities, no impermissible third-party communication results." *Id.* at *13-14.  The contractor is merely an agent "standing in the shoes" of the collection agency or debt collector.  *Id.* at *14.  The Attorney General posited that the use of a "fully-automated printing and mailing system . . . does not contain the same risk of embarrassment of invasion of privacy inherent in contact with a consumer's relatives, neighbors, or employer." *Id.*

### 3.   *The CFPB Has Found No Consumer Injury in Use of Letter Vendors*.

The panel's opinion also is contrary to the Consumer Financial Protection Bureau's ("CFPB") forthcoming amendments to Regulation F, 12 C.F.R. part 1006, which implements the FDCPA ("Rule").   12 C.F.R. § 1006, *et seq.* (effective November 30, 2021).  The CFPB acknowledges without objection that many debt collectors use letter vendors.  Debt Collection Practices (Regulation F), 85 Fed. Reg. 76734-01, 76738 (Nov. 30, 2020) (to be codified at 12 C.F.R. § 1006); Debt Collection Practices (Regulation F), 86 Fed. Reg. 5766-01, 5801, 5818, 5859 (Jan. 19, 2021) (to be codified at 12 C.F.R. § 1006).

The CFPB: (1) permits a debt collector to "disclose a vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information," 86 Fed. Reg. 5766-01, 5801, 5818, 5859; (2) provides a Model Validation Notice form for debt collectors to use, 12 C.F.R. § Pt.

1006, App. B (effective November 30, 2021); and (3) contemplates that debt collectors would have to work with letter vendors to reformat validation notices to comply with the Rule's validation information requirements. 86 Fed. Reg. 5766-01, 5845.\[1]

The CFPB's directives in the Rule demonstrate that debt collectors' use of letter vendors is not abusive. The electronic transmissions of *de minimis* information to mail merge machines do not contain the same risk of embarrassment or invasion of privacy inherent in contact with a consumer's relatives, neighbors, or employer. S. REP. 95-382, 4, 1977 U.S.C.C.A.N. 1695, 1699; *see Flood*, 176 P.3d at 777.

The panel's decision is contrary to the controlling precedent of the United States Supreme Court and Eleventh Circuit Court of Appeals as well as the intention of Congress and the CFPB. A full en banc rehearing is necessary to prevent an intra-Circuit split on this paramount issue of Article III standing.

---

[1]    The CFPB's field audit manual also accepts debt collectors' use of "service providers" separately from prohibited third-party communications pursuant to §1692c(b). The CFPB is clearly not concerned that the use of letter vendors is an FDCPA violation. *See* CFPB's Debt Collection Examination Procedures, at 6-7, 13-14, https://www.consumerfinance.gov/compliance/supervision-examinations/debt-collection-examination-procedures/ (last visited May 21, 2021).

## CONCLUSION

The panel's opinion – that an alleged statutory violation of §1692c(b) of the FDCPA constituted a "concrete injury" sufficient to confer Article III standing for Plaintiff – is contrary to the holding of the Supreme Court of the United States in *Spokeo* and the holdings of this Circuit in *Nicklaw*, *Trichell*, and *Muransky*. The deviation from the well-established precedents of this Circuit warrants a panel rehearing or a rehearing en banc.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A) and Fed. R. App. P. 40(b)(1), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6). This Petition contains 3,893 words, excluding the parts of the Petition exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 35-1 and it has been prepared in a proportionally spaced font using Microsoft Word in Times New Roman 14 point font.

/s/ Richard J. Perr
Richard J. Perr, Esquire

## CERTIFICATE OF SERVICE

I do hereby certify that on May 25, 2021, I electronically filed the foregoing Petition for Rehearing and for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notice of this filing to all parties indicated on the electronic filing receipt:

Thomas M. Bonan, Esquire

Seraph Legal, P.A.

2002 E. 5th Av., Suite 104

Tampa, FL 33605

(813) 56701239 Telephone

(855) 500-0705 Fax

Email:Tbonan@Seraphlegal.com

Pursuant to 11th Cir. R. 35-1, I also caused fifteen (15) true and correct copies of the foregoing Petition for Rehearing and for Rehearing En Banc  to be transmitted to the Court.

/s/ Richard J. Perr
Richard J. Perr, Esquire

# EXHIBIT A

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14434

_____

D.C. Docket No. 8:19-cv-00983-TPB-TGW


RICHARD HUNSTEIN,

Plaintiff - Appellant,

versus

PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 21, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

NEWSOM, Circuit Judge:

This appeal presents an interesting question of first impression under the

Fair Debt Collection Practices Act—and, like so many other cases arising under

federal statutes these days, requires us first to consider whether our plaintiff has Article III standing.

The short story:  A debt collector electronically transmitted data concerning a consumer's debt—including his name, his outstanding balance, the fact that his debt resulted from his son's medical treatment, and his son's name—to a third-party vendor.  The third-party vendor then used the data to create, print, and mail a "dunning" letter to the consumer.  The consumer filed suit alleging that, in sending his personal information to the vendor, the debt collector had violated 15 U.S.C. § 1692c(b), which, with certain exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in connection with the collection of any debt."  The district court rejected the consumer's reading of § 1692c(b) and dismissed his suit.  On appeal, we must consider, as a threshold matter, whether a violation of § 1692c(b) gives rise to a concrete injury in fact under Article III, and, on the merits, whether the debt collector's communication with its dunning vendor was "in connection with the collection of any debt."

We hold (1) that a violation of § 1692c(b) gives rise to a concrete injury in fact under Article III and (2) that the debt collector's transmittal of the consumer's personal information to its dunning vendor constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b).

Accordingly, we reverse the judgment of the district court and remand for further proceedings.

## I

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  To that end, § 1692c(b) of the FDCPA, titled "Communication with third parties," provides that—

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  The provision that § 1692c(b) cross-references—§ 1692b— governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information."  15 U.S.C. § 1692b.  The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several carefully crafted exceptions—some enumerated in § 1692c(b), and others in § 1692b.

Richard Hunstein incurred a debt to Johns Hopkins All Children's Hospital arising out of his son's medical treatment.  The hospital assigned the debt to

3

Preferred Collections & Management Services, Inc. for collection.  Preferred in turn hired Compumail, a California-based commercial mail vendor, to handle the collection.  Preferred electronically transmitted to Compumail certain information about Hunstein, including, among other things: (1) his status as a debtor, (2) the exact balance of his debt, (3) the entity to which he owed the debt, (4) that the debt concerned his son's medical treatment, and (5) his son's name.  Compumail used that information to generate and send a dunning letter to Hunstein.

Hunstein filed a complaint, alleging violations of both the FDCPA, *see* 15 U.S.C. §§1692c(b) and 1692f, and the Florida Consumer Collection Practices Act, *see* Fla. Stat. § 559.72(5).  As relevant here, the district court dismissed Hunstein's action for failure to state a claim, concluding that he hadn't sufficiently alleged that Preferred's transmittal to Compumail violated § 1692c(b) because it didn't qualify as a communication "in connection with the collection of a[ny] debt."[1]

---

[1] The district court held for the same reason that Hunstein had not stated a claim for a violation of § 1692f.  The district court then declined to accept supplemental jurisdiction over Hunstein's state-law claim.  Hunstein's appeal addresses only the portion of his complaint relating to § 1692c(b).

Hunstein appealed, and we requested supplemental briefing on the question whether he had Article III standing to sue, which we now consider along with the merits.[2]

## II

First things first.  Because standing implicates our subject matter jurisdiction, we must address it at the outset, before turning to the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).  Article III of the Constitution grants federal courts "judicial Power" to resolve "Cases" and "Controversies."  U.S. Const. art. III, §§ 1–2.  This case-or-controversy requirement, which has been construed to embody the doctrine of standing, "confines the federal courts to a properly judicial role."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The "irreducible constitutional minimum" of Article III standing entails three elements: injury in fact, causation, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).

Hunstein's appeal involves the first element, injury in fact, which consists of "an invasion of a legally protected interest" that is both "concrete and

---

[2] Whether Hunstein has standing to sue is a threshold jurisdictional question that we review de novo.  *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019).  "We review the decision to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) de novo, applying the same standard as the district court."  *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1268 (11th Cir. 2019).  Accepting the complaint's allegations as true and construing the facts in the light most favorable to Hunstein, "the relevant inquiry is whether Plaintiff has stated a 'plausible claim for relief' under the FDCPA."  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotation marks omitted).  In *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020), a case involving the FDCPA, we reiterated that "[e]ach subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied." *Id*. at 996–97.  The standing question here implicates the concreteness sub-element.

A plaintiff can meet the concreteness requirement in any of three ways. First, he can allege a tangible harm—a category that is "the most obvious and easiest to understand" and that includes, among other things, physical injury, financial loss, and emotional distress.  *See Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 926 (11th Cir. 2020) (en banc); *see also Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019).  Second, a plaintiff can allege a "risk of real harm." *Muransky*, 979 F.3d at 927.  Third, in the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury. *Spokeo*, 136 S. Ct. at 1549.  We consider each possibility in turn.

## A

Hunstein doesn't allege a tangible harm.  The complaint contains no allegations of physical injury, financial loss, or emotional distress.  Instead, the complaint (1) conclusorily asserts that "[i]f a debt collector 'conveys information

6

regarding the debt to a third party—informs the third party that the debt exists or provides information about the details of the debt—then the debtor may well be harmed by the spread of this information,'" and (2) vaguely references the "known, negative effect that disclosing sensitive medical information to an unauthorized third-party has on consumers[.]"  In his supplemental brief, Hunstein asks us to construe these assertions as allegations of emotional harm, arguing that he was "humiliated, embarrassed, and suffered severe anxiety[.]"  But we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted).  Hunstein thus cannot establish standing on the basis of a tangible harm.

## B

Nor can Hunstein demonstrate standing by the second route—showing a "risk of real harm."  "[W]hile very nearly any level of direct injury is sufficient to show a concrete harm, the risk-of-harm analysis entails a more demanding standard—courts are charged with considering the magnitude of the risk." *Muransky*, 979 F.3d at 927.  "Factual allegations that establish a risk that is substantial, significant, or poses a realistic danger will clear this bar[.]" *Id.* at 933.  Put slightly differently, to constitute injury in fact, the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Again, Hunstein alleges only that a debtor "may well be harmed by the spread" of the sort of information at issue here. That vague allegation falls short of a risk that is "substantial, significant, or poses a realistic danger," *Muransky*, 979 F.3d at 933, or is "certainly impending," *Clapper*, 568 U.S. at 409.

## C

We thus consider whether Hunstein can show standing in the third manner—through a statutory violation. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such that "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* instructs that in determining whether a statutory violation confers Article III standing, we should consider "history and the judgment of Congress." *Id*.

## 1

Starting with history, we can discern a concrete injury where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. Put differently, we look to "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky*, 979 F.3d at 926. *Muransky* explains that the "fit between a new statute and a pedigreed common-

law cause of action need not be perfect, but we are called to consider at a minimum whether the harms match up between the two." *Id*.

For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts. *See, e.g., Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918). By 1977, the Restatement (Second) noted that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." Restatement (Second) of Torts § 652A cmt. a. (Am. Law Inst. 1977).

More particularly, the term "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." *Invasion of Privacy*, Black's Law Dictionary 952 (10th ed. 2014). It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977); *accord, e.g.*, 77 C.J.S. Right of Privacy and Publicity § 32; 62A Am. Jur. 2d Privacy § 79. Indeed, the Supreme Court itself has recognized "the individual interest in avoiding disclosure of personal matters"

9

and has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (citation and quotation marks omitted).

Having established the historical pedigree of invasion-of-privacy torts—in particular, the sub-species applicable to the public disclosure of private facts—we next consider whether Preferred's alleged statutory violation is sufficiently analogous. Notably, the FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a). And to that end, the statutory provision under which Hunstein has sued here expressly prohibits a debt collector from "communicat[ing]" with any but a few persons or entities "in connection with the collection of any debt." *Id.* § 1692c(b). Although § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

*Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), strongly supports that conclusion. *Perry* concerned a plaintiff's allegations that CNN divulged his news-viewing history to a third-party in violation of the Video Privacy Protection Act. Emphasizing the widespread recognition both of the right

to privacy in general and, more particularly, the privacy interest implicated by the VPPA—the interest in preventing the disclosure of personal information—the Court in *Perry* concluded that the statutory violation of the VPPA constituted a cognizable Article III injury. *Id.* at 1341 (citing *Reporters*, 489 U.S. at 762–63). Hunstein's allegations closely resemble those in *Perry*. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b). As relevant here, the FDCPA similarly prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer[.]" §1692c(b). The two statutes thus share a common structure—A may not share information about B with C. Because we find *Perry*'s reasoning persuasive and analogous, we adopt it here.

Our decision in *Trichell* does not require a contrary conclusion. That case addressed a claim under a different FDCPA provision, § 1692e, which states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The plaintiffs in *Trichell* alleged that debt collectors had sent them misleading letters, and in assessing their claims' pedigree, we determined that the "closest historical comparison is to causes of action for fraudulent or negligent misrepresentation." 964 F.3d at 998. Canvassing the common-law history of those torts, we held that

11

the plaintiffs' claims lacked the necessary "close relationship" to them.  *Id*. at 997–98.  That conclusion is entirely consistent with our holding here that Hunstein has standing to sue under a different FDCPA provision.  Hunstein's claim, unlike the *Trichell* plaintiffs', arises under § 1692c(b) and bears a close relationship to a common-law tort.

**2**

Although it presents a closer question, we conclude that "the judgment of Congress" also favors Hunstein.  Congress, of course, expresses its "judgment" in only one way—through the text of duly enacted statutes.  Even assuming that § 1692c(b) does not clearly enough express Congress's judgment that injuries of the sort that Hunstein alleges are actionable, here Congress went further to "explain itself."  *Huff*, 923 F.3d at 466.  In particular, as already noted, in a section of the FDCPA titled "Congressional findings and declaration of purpose," Congress identified the "invasion[] of individual privacy" as one of the harms against which the statute is directed.  15 U.S.C. § 1692(a).  That, we think, is sufficient.

It's true that we pointed in *Trichell* to the FDCPA's language that a person may recover "any actual damage sustained by such person as a result of" an FDCPA violation and "such additional damages as the court may allow," 15 U.S.C. § 1692k(a), as evidence of Congress's judgment that violations of a

12

different provision—§ 1692e—do not ipso facto constitute a concrete injury. *Trichell*, 964 F.3d at 1000.  We don't read § 1692k(a), though, as categorically limiting the class of FDCPA plaintiffs to those with *actual damages*—particularly where, as here, the FDCPA's statutory findings expressly address the very harm alleged—an "invasion[] of individual privacy."  15 U.S.C. § 1692(a).

\* \* \*

Because (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of §1692c(b) constitute a concrete injury, we conclude that Hunstein has the requisite standing to sue.

### III

Having determined that Hunstein has standing to sue under § 1692c(b), we now consider the merits of his case.  Recall that § 1692c(b) states that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer.  15 U.S.C. § 1692c(b).  The parties agree that Preferred is a "debt collector," that Hunstein is a "consumer," and that the alleged debt at issue here was a "consumer debt," all within the meaning of § 1692c(b).  Helpfully, the parties also agree that Preferred's transmittal of Hunstein's personal information to Compumail constitutes a

"communication" within the meaning of the statute.[3]  Accordingly, the sole

question before us is whether Preferred's communication with Compumail was "in

connection with the collection of any debt," such that it violates §1692c(b).

Hunstein contends that the plain meaning of the phrase "in connection with the

collection of any debt" and relevant precedents show that it was and does.

Preferred, conversely, urges us to adopt a "factor-based analysis" that shows that, it

says, its communication with Compumail was not "in connection with the

collection of any debt."

We begin with the plain meaning of the phrase "in connection with" and its

cognate word, "connection."  Dictionaries have adopted broad definitions of both.

Webster's Third defines "connection" to mean "relationship or association."

*Connection*, Webster's Third International Dictionary at 481 (1961), and the

Oxford Dictionary of English defines the key phrase "in connection with" to mean

"with reference to [or] concerning," *In Connection With*, Oxford Dictionary of

English at 369 (2010).  Usage authorities further explain that the phrase "in

---

[3] Section 1692a(2) defines communication as "the conveying of information regarding a debt
directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).

connection with" is "invariably a vague, loose connective."  Bryan A. Garner,

Garner's Dictionary of Legal Usage 440 (3d ed. 2011).

Preferred's transmittal to Compumail included specific details regarding

Hunstein's debt: Hunstein's status as a debtor, the precise amount of his debt, the

entity to which the debt was owed, and the fact that the debt concerned his son's

medical treatment, among other things.  It seems to us inescapable that Preferred's

communication to Compumail at least "concerned," was "with reference to," and

bore a "relationship [or] association" to its collection of Hunstein's debt.  We thus

hold that Hunstein has alleged a communication "in connection with the collection

of any debt" as that phrase is commonly understood.

Preferred resists that conclusion on three different grounds, which we

address in turn.

## A

First, Preferred relies on our interpretation of another FDCPA provision,

§ 1692e, to argue that communications "in connection with the collection of any

debt" necessarily entail a demand for payment.  In relevant part, § 1692e states that

"[a] debt collector may not use any false, deceptive, or misleading representation

or means *in connection with the collection of any debt*."  15 U.S.C. § 1692e

(emphasis added).  In the line of cases interpreting the meaning of "in connection

with the collection of any debt" in § 1692e, we have focused on the language of the

underlying communication.  In *Reese v. Ellis, Painter, Ratterree & Adams, LLP*,

for instance, in concluding that a law firm's letter to a consumer was "in

connection with the collection of any debt" within the meaning of § 1692e, we

emphasized that the letter expressly stated that the firm was attempting to collect a

debt and was acting as a debt collector, demanded full and immediate payment,

and threatened to add attorneys' fees to the outstanding balance if the debtors

didn't pay.  678 F.3d 1211, 1217 (11th Cir. 2012).  Similarly, in *Caceres v.*

*McCalla Raymer, LLC*, we held that a collection letter constituted a

"communication in connection with the collection of a[ny] debt" under § 1692e for

similar reasons.  Quoting the letter, we emphasized "that it is 'for the purpose of

collecting a debt;' it refers in two additional paragraphs to 'collection efforts;' it

states that collections efforts will continue and that additional attorneys' fees and

costs will accrue; it states the amount of the debt and indicates that it must be paid

in certified funds; and it gives the name of the creditor and supplies the law firm's

phone number in the paragraph where it talks about payments."  755 F.3d 1299,

1301–03 (11th Cir. 2014).

    Relying on *Caceres* and *Reese*—both of which, again, addressed § 1692e—

the district court here adopted the following test:

> When determining whether a communication was made in connection
> with the collection of a[ny] debt, the courts look to the language of the
> communication itself to ascertain whether it contains a demand for
> payment and warns of additional fees or actions if payment is not

tendered.  Consequently, when determining whether the transmission of information to a third party constitutes a violation of the FDCPA, it is important to consider whether the communication makes an express or implied demand for payment.

The district court's conclusion that the phrase "in connection with the collection of any debt" necessarily entails a demand for payment defies the language and structure of § 1692c(b) for two separate but related reasons—neither of which applies to § 1692e.  First, the demand-for-payment interpretation would render superfluous the exceptions spelled out in §§ 1692c(b) and 1692b.  Consider as an initial matter the exceptions specified in § 1692c(b) itself:  "[A] debt collector may not communicate, in connection with the collection of any debt, with any person *other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector*[.]"  15 U.S.C. § 1692c(b) (emphasis added).  Communications with four of the six excepted parties—a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector—would *never* include a demand for payment.  The same is true of the parties covered by § 1692b and, by textual cross-reference, excluded from § 1692c(b)'s coverage:  "person[s] other than the consumer" with whom a debt collector might communicate "for the purpose of acquiring location information

about the consumer." *Id*. § 1692b.  A debt collector would presumably never make

a demand for payment of a party matching that description.

The upshot is that the phrase "in connection with the collection of any debt"

in § 1692c(b) must mean something more than a mere demand for payment.

Otherwise, Congress's enumerated exceptions would be redundant.  Under the

district court's demand-for-payment interpretation, Congress wouldn't have

needed to include exceptions for communications with consumer reporting

agencies, creditors, attorneys of creditors, attorneys of debt collectors, or persons

providing a debtor's location information; those communications would have been

foreclosed ipso facto by the phrase "in connection with the collection of any debt."

It is a "cardinal principle of statutory construction" that "a statute ought, upon the

whole, to be so construed that, if it can be prevented, no clause, sentence, or word

shall be superfluous[.]" *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotation

marks omitted); *accord, e.g*., Antonin Scalia & Bryan A. Garner, Reading Law:

The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every

provision is to be given effect . . . .  None should be ignored.  None should

needlessly be given an interpretation that causes it to duplicate another provision or

to have no consequence.").  Because it is possible—and indeed, we think, more

18

natural—to interpret § 1692c(b) in a way that does not render most of its textually specified exceptions redundant, we will do so.

Second, and relatedly, the district court's interpretation renders yet another portion of § 1692c(b) meaningless. By insisting on a demand for payment, the district court essentially interpreted "in connection with the collection of any debt" to mean "to collect any debt." Under this interpretation, the key phrase "in connection with" has no independent meaning or force. But as just explained, we have a duty to "give effect, if possible, to every clause and word of a statute[.]" *Duncan*, 533 U.S. at 174.

The district court seems to have been led astray by its reliance on decisions interpreting § 1692e, whose language and operation are different from § 1692c(b)'s in important respects. As a linguistic matter, § 1692e contains none of the specific exceptions that § 1692c(b) does; accordingly, there was no risk in *Reese* or *Caceres* that, by reading a "demand for payment" gloss into § 1692e, we would render other portions of that statute redundant or meaningless. And as an operational matter, § 1692e—which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt"—covers the sorts of claims that are brought by recipients of debt collectors' communications— *i.e.*, debtors. *See Caceres*, 755 F.3d at 1300–1301 (case brought by recipient of letter, the debtor); *Reese*, 678 F.3d at 1214 (same). As its title indicates, by

contrast, § 1692c(b), targets debt collectors' "[c]ommunication with third parties,"

not debtors.  In the typical § 1692c(b) case, the debtor isn't the recipient of the

challenged communication.  Linguistic differences aside, this practical operational

difference undermines any argument that the meaning of the phrase "in connection

with the collection of any debt" must necessarily be the same in § 1692c(b) as in §

1692e.

**B**

Preferred separately urges us to adopt the holistic, multifactor balancing test

that the Sixth Circuit decreed in its unpublished opinion in *Goodson v. Bank of*

*Am., N.A.*, 600 Fed. Appx. 422 (6th Cir. 2015).  That test counsels courts

confronting § 1692e's "in connection with the collection of any debt" language to

take into account the following seven considerations:

> (1) the nature of the relationship of the parties; (2) whether the
> communication expressly demanded payment or stated a balance due;
> (3) whether it was sent in response to an inquiry or request by the
> debtor; (4) whether the statements were part of a strategy to make
> payment more likely; (5) whether the communication was from a debt
> collector; (6) whether it stated that it was an attempt to collect a debt;
> and (7) whether it threatened consequences should the debtor fail to
> pay.

*Goodson*, 600 F. App'x at 431.  We decline Preferred's invitation for two related

reasons.

First, and perhaps most obviously, *Goodson* and the cases that have relied on

it concern § 1692e—not § 1692c(b).  And as just explained, §§ 1692c(b) and

1692e differ both (1) linguistically, in that the former includes a series of exceptions that an atextual reading risks rendering meaningless, while the latter does not, and (2) operationally, in that they ordinarily involve different parties. *Goodson*'s seventh factor—whether the communication threatened consequences should the debtor fail to pay—illustrates this point.  It makes little sense for a debt collector to threaten consequences should the debtor fail to pay in a communication that is not sent to the debtor himself.

Second, we believe that in the context of § 1692c(b), the phrase "in connection with the collection of any debt" has a discernible ordinary meaning that obviates the need for resort to extratextual "factors."  All too often, multifactor tests—especially *seven*-factor tests like *Goodson*'s—obscure more than they illuminate.  Parties to FDCPA-governed transactions—debtors, creditors, debt collectors, lawyers, etc.—are entitled to guidance about the scope of permissible activity.  They are likelier to get it even from broadly framed statutory language than from judge-made gestalt.

## C

Lastly, Preferred makes what we'll call an "industry practice" argument.  It contrasts what it says is the widespread use of mail vendors like Compumail and the relative dearth of FDCPA suits against them.  More particularly, Preferred identifies cases involving mail vendors and emphasizes that none of them hold that

a debt collector's mail vendor violated the FDCPA.  True enough, but none of the cases that Preferred cites involved § 1692c(b) claims, and the courts in those cases certainly had no obligation to *sua sponte* determine whether the collectors' communications to their vendors violated § 1692c(b).  That this is (or may be) the first case in which a debtor has sued a debt collector for disclosing his personal information to a mail vendor hardly proves that such disclosures are lawful.

One final (and related) point:  It's not lost on us that our interpretation of § 1692c(b) runs the risk of upsetting the status quo in the debt-collection industry. We presume that, in the ordinary course of business, debt collectors share information about consumers not only with dunning vendors like Compumail, but also with other third-party entities.  Our reading of § 1692c(b) may well require debt collectors (at least in the short term) to in-source many of the services that they had previously outsourced, potentially at great cost.  We recognize, as well, that those costs may not purchase much in the way of "real" consumer privacy, as we doubt that the Compumails of the world routinely read, care about, or abuse the information that debt collectors transmit to them.  Even so, our obligation is to interpret the law as written, whether or not we think the resulting consequences are particularly sensible or desirable.  Needless to say, if Congress thinks that we've

misread § 1692c(b)—or even that we've properly read it but that it should be amended—it can say so.

IV

To sum up, Hunstein has Article III standing to bring his claim under § 1692c(b).  Further, because Preferred's transmittal of Hunstein's personal debt-related information to Compumail constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b)'s key phrase, Hunstein adequately stated a claim.

**REVERSED and REMANDED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 21, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-14434-HH
Case Style:  Richard Hunstein v. Preferred Collection
District Court Docket No:  8:19-cv-00983-TPB-TGW

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14434

_____

ERRATA

RICHARD HUNSTEIN,

Plaintiff - Appellant,

versus

PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

The opinion has been changed as follows:

On page 4, footnote 1, "state law" has been changed to "state-law"

On page 20, "multi-factoring" has been changed to "multifactor"

On page 21, "a broadly framed statutory language than from a judge-made gestalt" has been changed to "broadly framed statutory language than from judge-made gestalt"