UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:21-cv-80929-WM

TERRY TANNENBAUM, on his own
behalf and on behalf of all others similarly
situated,

    Plaintiff,

v.

CALIBER HOME LOANS, INC., a
Delaware corporation,

    Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO STAY**

**I.     INTRODUCTION**

This case challenges Defendant Caliber Home Loans, Inc.'s ("Defendant" or "Caliber") repeated violations of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, Caliber unlawfully discloses private consumer data to third-party vendors in connection its collection of consumer debts—conduct that violates the plain language of the FDCPA, 15 U.S.C. § 1692c(b). Caliber has already filed a motion to dismiss (Dkt. 24)—which is currently pending—but now moves for a stay of this matter pending the Eleventh Circuit's ruling on a petition for rehearing in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021).

Caliber's Motion to Stay should be denied. As the Court has previously recognized, Defendant's request to stay the case is speculative—Caliber asks the Court to stay this matter in the hopes that the Eleventh Circuit grants rehearing *en banc*. Until that occurs, however, the

request is premature.

Put simply, and as explained in greater detail below, Defendant's motion lacks merit. Caliber has not met its burden to demonstrate the necessity of a stay, and the *Landis* factors supporting a court's discretion to stay proceedings are not supported here. Accordingly, the Court should deny Defendant's motion to stay and order the Parties to proceed with discovery.

## II.     BACKGROUND

Tannenbaum's home loan is serviced by Caliber, and, over the course of the loan, Plaintiff received a number of letters regarding a past-due mortgage balance. (Dkt. 1 at ¶¶ 11–12.) Tannenbaum alleges that Caliber violated the FDCPA by communicating with third-party vendors about Plaintiff's debt for various reasons, including the mailing of debt collection letters and loss mitigation purposes. (*Id.* ¶¶ 13–16, 31–33.) Plaintiff brought his claim on behalf of himself and a class of similarly-situated consumers whose debt information was shared in the same manner. (*Id.* ¶ 17.)

After the Complaint was filed on May 25, 2021, Defendant sought additional time to answer, and Plaintiff did not oppose the request for an enlargement of time. (Dkt. 13 at 1.) In its motion for additional time, Caliber noted the existence of a petition for rehearing in the appeal of *Hunstein*—a recent Eleventh Circuit decision that supports Plaintiff's cause of action. (*Id.* at 2.) Defendant further stated that "[i]f the Eleventh Circuit grants [the] petition for rehearing, Caliber intends to move for a stay." (*Id.*) On June 11, 2021, the Court partially granted the motion for enlargement of time, noting that it did so "to the exclusion" of Defendant's anticipatory statement that it would later seek a stay of the proceedings, finding that such basis was "overly speculative to establish good cause" for the enlargement of time sought. (Dkt. 16.) Caliber

2

thereafter filed a motion to dismiss on June 30, 2021. (Dkt. 24.) Plaintiff filed his response on July 14, 2021 (dkt. 26), and Caliber sought and received an extension to its deadline to file a reply in support of its motion to dismiss. (Dkt. 30, 31.)

As alluded to in its first motion for an extension of time, although earlier than previously suggested, Caliber now moves the Court for a stay of this matter. Prior to its extended reply deadline, and prior to any decision made on the petition for rehearing in *Hunstein*, Defendant files the instant motion for a stay asking the Court to preemptively stay the case until the Eleventh Circuit grants or denies the petition for re-hearing, and in the event that the petition is granted, to further stay the case for the duration of any such rehearing. (Dkt. 32 at 1–2.) For the reasons stated below, Caliber's motion should be denied.

### III.  ARGUMENT

Caliber's motion to stay this case is unsupported. There is no pending case that warrants postponing these proceedings, and the *Landis* factors that courts follow when determining whether a stay is warranted weigh against Defendant's request. Defendant's argument is speculative, and further delay is inappropriate.

In *Landis*, the Supreme Court acknowledged that courts have inherent power to control their own dockets, including the power to stay. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Any party seeking a stay, however, "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Only in "rare circumstances" will a party be compelled to stand aside while a litigant in another case settles the rule of law that will define the

rights of both. *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046-CIV, 2020 WL 5819809, at *3 (S.D. Fla. Sept. 30, 2020) (citing *Landis*, 299 U.S. at 255).

Courts across the nation have derived a variety of multi-factor tests from *Landis*. Defendant points to one set of factors that has been applied by some courts in this circuit: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the [C]ourt." (Dkt. 32 at 5) (quoting *Ring v. City of Gulfport*, No. 8:20-CV-593-T-33CPT, 2020 WL 3895435, at *2 (M.D. Fla. July 10, 2020)). Other formulations have focused on whether the stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed, and considerations of judicial economy. *Garmendiz v. Capio Partners, LLC*, No. 817CV00987EAKAAS, 2017 WL 3208621, at *1 (M.D. Fla. July 26, 2017); *see also On Point Global*, 2020 WL 5819809, at *3; *Jones v. United States*, No. 04-60216-CR, 2008 WL 2594684, at *1 (S.D. Fla. May 12, 2008).

These factors can be broadly distilled into two categories: (1) the balance of harms that a stay (or failure to grant stay) would cause to the parties and (2) judicial economy. Ultimately, the burden is on the movant to demonstrate that a stay is necessary. *Garmendiz*, 2017 WL 3208621, at *1. Caliber has not met its burden, and the *Landis* factors do not favor the requested stay.

### *Balance of harms*

Regardless of which particular set of *Landis* factors is applied, the effect of the stay on each of the parties must be considered—in other words, the Court must weigh potential harm or prejudice that would be caused to Plaintiff by granting the stay against any hardship that

4

Defendant would experience in the absence of a stay. *See Garmendiz*, 2017 WL 3208621, at *1; *see also Ring*, 2020 WL 3895435, at *2. Caliber has failed to demonstrate that the balance of harms favors its requested stay.

Defendant claims that a stay will not prejudice Plaintiff because the case is at an early stage and because "Caliber acknowledges its obligations to preserve evidence"—which supposedly means that there will be no prejudicial effect on evidence. (Dkt. 32 at 6–7.) Though the case may be in its early stages, Plaintiff's ability to pursue this action would be prejudiced by a stay. Generally, a delay that results from a stay can harm plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Defendant is effectively asking to stay all proceedings and discovery not only until the Eleventh Circuit decides whether to rehear the *Hunstein* case, but in the event that it does rehear the case, for the duration of any such rehearing. Regardless of Caliber's stated acknowledgement of its evidentiary responsibilities, allowing Caliber to ignore discovery that has been issued or block subpoenas needed from third parties to secure evidence only serves to prejudice Plaintiff, as much of the evidence needed to prove his claims is possessed by Defendant and its agents. Indeed, the cause of action in this matter implicates the transmission of debt information to one or more third party agents of Defendant. (Dkt. 1 at ¶¶ 13, 16, 32–33.) No statement by Caliber can guarantee that such parties will retain all relevant documents, let alone prevent the memories of any witnesses from fading.

As the Supreme Court held in *Landis*, a party seeking a stay must make out a "clear case of hardship or inequity" in proceeding if there is "even a fair possibility" that granting the stay may damage another party. *Landis*, 299 U.S. at 255. Thus, in light of the possible prejudice that a stay would cause to Tannenbaum and his ability to procure evidence to support his claims, Caliber must make a clear case of hardship or inequity to demonstrate that a stay is warranted; Caliber has failed to do so. The only "hardship" claimed by Caliber is litigation expenses, which are merely the natural and inevitable consequence of a civil suit and not adequate to warrant a stay. (Dkt. 32 at 8); *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'").

Further, Defendant's theory that it may obviate any and all litigation expenses by simply postponing this case and waiting for a hypothetical reversal in *Hunstein* is flawed for several reasons. First, and most obviously, there is no pending case that will relieve Caliber's responsibility to defend this matter. Defendant is asking the Court to cease all proceedings to see *if* the Eleventh Circuit will rehear the *Hunstein* matter; even if it were to do so, there is no guarantee that doing so would result in a reversal. Additionally, the holding of any hypothetical rehearing is unlikely to completely "render[] moot" Plaintiff's claim, which is not based solely on the *Hunstein* opinion but on the statutory language of the FDCPA. (Dkt. 32 at 8; s*ee* Dkt. 1 at ¶¶ 31–33.)

The scenario predicted by Caliber—that the Eleventh Circuit not only reverses its *Hunstein* opinion but does so in a way that precludes Plaintiff entirely from making his claim against Defendant—requires several leaps of the imagination to conjure. Put another way, the

6

"hardship" of litigation and discovery expenses that Caliber wishes to avoid will, in all likelihood, still remain in many potential scenarios, including those favorable to Defendant's position. Caliber's speculation that it may avoid all "hardship" by completely stalling this case for an unspecified amount of time is highly speculative, and it is not enough to outweigh the potential harm and prejudice to Plaintiff's case that an indefinite stay would cause. Thus, under any iteration of the *Landis* factors, the balance of harms to Plaintiff and Defendant does not support Caliber's request to stay the case.

### *Judicial economy*

The second category of *Landis* factors comprises matters of judicial economy. Amid the various factor tests used in this circuit are considerations of "simplify[ing] the issues and streamlin[ing] the trial," reducing the burden on the court, and "the effect of the stay on the public interest, including the 'judiciary's interest in efficiency, economy, and fairness.'" *Compare Drayton v. Toyota Motor Credit Corp.*, No. 3:16-CV-46-J-39JBT, 2017 WL 10841496, at *1 (M.D. Fla. July 31, 2017), *with Jones v. United States*, No. 04-60216-CR, 2008 WL 2594684, at *1 (S.D. Fla. May 12, 2008).

Judicial economy does not favor the requested stay. In a brief paragraph, Caliber suggests that a stay would "undoubtedly" simplify issues and reduce the burden on the Court by claiming that the Eleventh Circuit's "final decision in *Hunstein* may establish case-dispositive, binding precedent." (Dkt. 32 at 7.) To be clear, there is currently *no pending rehearing* of the *Hunstein* appeal. Caliber is asking the Court to halt this matter entirely to see if the Eleventh Circuit will even *reconsider* the matter. Granting stays on speculation would lead to absurd results, as parties

could simply file appeals and motions to reconsider to stop the presses in all related matters.[1] But the Supreme Court in *Landis* cautioned that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Here, there is not yet another cause for the parties to await—only a petition for rehearing that Defendant hopes will relieve Caliber of the need to defend this matter.

    Staying this case would not serve judicial economy in any form. Postponement until the petition for rehearing is heard (and for a further, unspecified amount of time after that) would not relieve the Court or parties of any burden, and it certainly would not streamline this case or its resolution. Rather, a stay would interrupt the discovery already in progress between the parties and force this action to stagnate on the Court's docket for potentially many months, all in the hopes that Caliber will receive a complete reversal that somehow precludes Tannenbaum's claim entirely. Even if the Eleventh Circuit were to rehear the *Hunstein* appeal, there are many foreseeable outcomes in which the ruling is either upheld or merely modified, in which case Plaintiff's claim would remain for disposition in this Court and discovery would still be required to resolve the matter. In other words, no "burden" is relieved by simply delaying inevitable discovery and proceedings to some later date.

    Regardless of which *Landis* factor test is applied, Defendant has failed to demonstrate how judicial economy and efficiency would be served by speculatively staying this case for an indefinite amount of time. There is no "final decision" pending, and if the Eleventh Circuit does

---

[1] If the petition in *Hunstein* is denied, for example, the defendant therein may well petition the Supreme Court for review, which would embolden Caliber and other FDCPA defendants to seek further indefinite stays.

rehear *Hunstein*, there is no indication that a revised decision would preclude Plaintiff's claim or the need for discovery. Thus, considerations of judicial economy also weigh against the requested stay, and the Court should deny Caliber's motion.

## IV. CONCLUSION

Caliber's motion to stay this matter should be denied. The harms that Defendant claims it will suffer are either the natural consequence of litigation or the product of speculation as to the fate of the Eleventh Circuit's own holding. Likewise, judicial economy would not be favored by delaying discovery and permitting this case to languish on the docket rather than progress toward a resolution. Accordingly, the Court should deny Defendant's motion to stay, permit the parties to continue with discovery, and award any such relief as it deems necessary and just.

Respectfully submitted,

**TERRY TANNENBAUM**, individually and on behalf of all similarly situated individuals

Date: August 6, 2021

By: /s/ Ryan S. Shipp
Ryan S. Shipp, Esquire
Florida Bar #52883
ryan@shipplawoffice.com
Law Office of Ryan S. Shipp, PLLC
814 W. Lantana Rd., Suite 1
Lantana, Florida 33462
(561) 699-0399

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

*Counsel for Plaintiff Terry Tannenbaum*

*Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on August 6, 2021.

  /s/ Ryan S. Shipp
Ryan S. Shipp