UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Terry Tannebaum, *on his own behalf and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br>v.<br><br>Caliber Home Loans, Inc., *a Delaware corporation*,<br><br>    *Defendants*. | Case No. 9:21-cv-80929-WM<br><br>CLASS ACTION |

## PLAINTIFF TERRY TANNENBAUM'S REPLY IN SUPPORT OF MOTION TO FILE AMENDED COMPLAINT

Defendant Caliber Home Loans, Inc.'s ("Defendant" or "Caliber") Response in Opposition to Plaintiff Terry Tannenbaum's ("Plaintiff" or "Tannenbaum") Motion for Leave to File Amended Complaint largely ignores the critical factual differences between this case and *Hunstein*.

Try as it might to fit a proverbial square peg into a round hole, Caliber's efforts fall flat. As the Eleventh Circuit explained in *Hunstein*:

> [Hunstein's] complaint says that Preferred Collection placed his personal information "within the possession of an unauthorized third-party" that "populated some or all of this information into a pre-written template, printed, and mailed the letter" to Hunstein. The allegations stop there.
>
> The dissent, in apparent agreement that these facts are insufficient on their own, indulges what it calls the "eminently reasonable inference" that "living, breathing, thinking individuals" must have read and considered the information about Hunstein's debt. Dissenting Op. at 1260, 1270–71. To further support this "inference," the dissent leans on language from Count I of the complaint, which says that Preferred Collection "disclosed information" about Hunstein's debt "to the employees of an unauthorized third-party mail house." *See id.* at 1269. We do not see how this moves the needle. It does not say or even suggest that the employees have read and understood the information. And reading the complaint as a whole

1

(as we must), the rest of the allegations show that the disclosure was an electronic transfer between two companies.

Indeed, Hunstein's own attorney declined to embrace the dissent's "eminently reasonable inference"—even with significant encouragement to do so. He agreed at oral argument that Hunstein had alleged that employees had "access" to his information, but not that "anyone read or perceived it." Oral Argument at 6:33–7:45. There was an obvious reason for this approach, which was also conceded at argument: the complaint was drafted to allege a pure statutory violation, one that was complete at the moment the lender hit "send" and transmitted the information to Preferred Collection. *Id.* at 4:27–4:40; 9:27–9:54. Though it is now clear (again as the lawyer conceded) that a pure statutory violation is not enough to establish harm, Hunstein never sought to replead his case. *Id.* at 7:29–7:39; 8:48–9:48.

Transmitting information that no one reads or perceives is not publicity. Contrary to the dissent's suggestion, we give Hunstein "the benefit of the doubt"; we simply decline to rewrite his complaint for him. Dissenting Op. at 1272. "We will not imagine or piece together an injury sufficient to give a plaintiff standing when *1248 it has demonstrated none, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury." *Muransky*, 979 F.3d at 925 (quotations and brackets omitted).

All that to say, nowhere does Hunstein suggest that Preferred Collection's communication reached, or was sure to reach, the public. Quite the opposite—the complaint describes a disclosure that reached a single intermediary, which then passed the information back to Hunstein without sharing it more broadly.

That act cannot be said to have a "close relationship" with a tort which, at its core, requires either actual public disclosure or a substantial certainty that the disclosed information will reach the public at large. None of that is present here; again, Hunstein did not even allege that a single employee ever read or understood the information about his debt. Under even the most generous reading of his complaint, one company sent his information to another, where it was "populated" into a private letter that was sent to his own home. That is simply not enough.

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1247–48 (11th Cir. 2022).

But that is not this case. Plaintiff's proposed amended complaint specifically alleges that:

(1) Caliber shares consumers' personal information (including social security number, account balances, and payment history) for its everyday business purposes;

(2) Caliber has communicated such personal information with at least two different third-

2

parties: its mail vendor, and Caneel Group;

(3) Caliber has maintained consistent communication with Caneel Group regarding Plaintiff's debt (and the details related to the debt) until the present day;

(4) Caneel Group human representatives contacted Plaintiff's foreclosure counsel as recently as May 10, 2021 and stated it was calling on behalf of Caliber;

(5) The communication of Plaintiff's sensitive information to both Caliber's mail vendor and to Caneel Group was a public disclosure of Plaintiff's (and the Class's) personal information. The information was undoubtedly reviewed by "living, breathing, thinking individuals" and such persons read and understood the information;

(6) The communication of Plaintiff and the Class's information was not simply an electronic transfer: multiple persons at the Caneel Group (including Seth Newell and Rebecca Suarez—actual living, breathing human beings) read and understood the information transmitted to Caneel. Not only did they read and understand it, they sent multiple emails and placed multiple telephone calls related to the information and its contents; and

(7) This is not a case where personal information communicated by Caliber was simply "made available" on an electronic portal and never accessed. Quite the opposite. It was read and perceived by the receivers: human beings both at Caneel and, on information and belief, at the third-party mail vendor,

(Proposed Amended Complaint at 13-19.).

Thus, because Plaintiff's proposed amended complaint sufficiently distinguishes the facts of this case from *Hunstein*, and specifically resolves the shortcomings identified by the Eleventh Circuit in *Hunstein*, amendment would not be futile. The Court should grant Plaintiff leave to amend.

                                                      Respectfully submitted,

                                                      **TERRY TANNENBAUM**, individually and on behalf of all similarly situated individuals

Date: December 6, 2022                     By: /s/ Ryan S. Shipp
                                                      Ryan S. Shipp, Esquire
                                                        Florida Bar #52883
                                                        ryan@shipplawoffice.com
                                                        Law Office of Ryan S. Shipp, PLLC
                                                        814 W. Lantana Rd., Suite 1
                                                        Lantana, Florida 33462
                                                        (561) 699-0399

                                                        Steven L. Woodrow (pro hac vice)
                                                        swoodrow@woodrowpeluso.com
                                                        Woodrow & Peluso, LLC
                                                        3900 East Mexico Ave., Suite 300
                                                        Denver, Colorado 80210
                                                        Telephone: (720) 213-0675

                                                        *Counsel for Plaintiff Terry Tannenbau*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on December 6, 2022.

       /s/ Ryan S. Shipp
      Ryan S. Shipp